TRAFTON HATCH *et al. vs.* SIMON H. BROWN.

*Real action.   Deposition.   Evidence.*

The demandant filed a statement of his deduction of title, under R. S., c. 104, § 3, deriving its origin from Stephen Willard, but did not trace it to him at the trial; *held,* that it was not indispensable that he should do so, but sufficient for him to go back in the line indicated far enough to show a better title than that of the tenant.

In this case the demandants had taken the tenant's deposition. Brown was present at the trial, but was not called as a witness. *Held,* that the plaintiffs had a right to put in the paper containing his statements (given as a deposition) to prove his admissions, and that it is only the use of it as a deposition that is prohibited by R. S., c. 107, § 17, where the cause for taking no longer exists. Any other legitimate use which the party taking it can make of it is not thereby forbidden.

Where a party uses a deposition taken by his opponent, he makes it his own, and the adverse party has the same right of objection to the questions and answers which he would have had if the deposition had been taken by the party offering it, and is not estopped by the fact that the interrogatories he objects to were propounded by himself.

Mary Ann Mayberry, a witness for the defendant, was asked, upon cross-examination, whether or not her brother Stephen claimed to own the demanded premises in the life time of their mother, from whom Brown now deduced his claim of title; *held,* admissible, not only as a test of the memory and truthfulness of the witness, but also because the demandants had introduced testimony to prove that the defence was fraudulently manufactured by said Stephen, so that his acts relating to the property became pertinent and material evidence.

Other witnesses were properly allowed to state other acts of said Stephen, for the same reason.

*Held,* that exceptions will not be sustained, because a witness was allowed to state a collateral fact of little (if any) importance, though it was matter of record.

The defendant relied upon inferences from secondary evidence to establish title in Jane Mayberry, from whom he claimed; *held,* that the demandants could rebut these inferences by similar testimony.

ON EXCEPTIONS.

WRIT OF ENTRY demanding possession of certain premises in Sanford, in this county. There was no derivation of title in the

declaration but the demandants filed the "informal statement" provided for by R. S., c. 104, § 3, in which they named Stephen Willard as the original holder of their title, and thence traced it through Morse & Mayberry, Thomas Hobbs and Ira T. Drew to themselves. At the trial they did not introduce any evidence of ownership in Willard, going back no further than to Morse & Mayberry, whom they said bought of Stephen Willard, but the deed of Willard to Morse & Mayberry was never recorded, and the plaintiffs believed it to have been destroyed, or else in the possession of the Mayberry family, and suppressed by them. Such a conveyance was referred to in those subsequently made by Morse. Willard, N. D. Appleton, Esq., who wrote the deed from Willard, Judge Bourne, who wrote Morse's deed to Hobbs, are all dead, and Morse is supposed to be so, nothing having been known of his whereabouts for a dozen years. From 1846 to 1848, Morse & Mayberry operated on the lot. Subsequently a disagreement arose between them as to their business connection, Morse claiming a general partnership, and Mayberry that there was only a special agreement, by the terms of which he held half the property simply as collateral security for his advances. They submitted their disputes to referees, the late Judge Allen and Timothy Shaw, Jr., who found, September 15, 1856, that there was a special agreement. Thereupon, Judge Clifford, as counsel for Mayberry, tendered Morse a quitclaim of half the Willard lot, and demanded payment of the sums advanced by him in their operations on this land. Three actions were left to these referees, two in favor of William Mayberry against Benjamin Morse, and one in favor of Stephen P. Mayberry against Morse & Mayberry. Mr. Shaw, the surviving referee, was allowed, against objection, to state the names of these suits and the fact of their being referred, and that Stephen P. Mayberry was a witness, the last witness called, and was present at the hearing of all the cases, and the decision to which the referees came. When Stephen P. Mayberry obtained his execution, he levied it upon this lot as the property of Morse & Mayberry, but his attachment

failed, so that he took nothing by his levy. Upon the second day of November, 1858, he conveyed the larger part of these premises, by deed of warranty, to one Isaiah Perkins, who conveyed the same land to the tenant, September 10, 1868. The plaintiffs took Mr. Perkins' deposition. He remembered nothing about these conveyances, except that some deeds were made and executed to and from him at the request of Stephen P. Mayberry, without Perkins ever seeing the property, or knowing anything about it, or recollecting the prices at which he bought or sold, or whether or not he paid or received anything for it; and he did not, in fact, remember ever taking a deed from Stephen, but thought it was from William Mayberry; nor could he tell to whom he made conveyance.

The tenant claimed that Stephen Willard's deed was to Jane Mayberry, the wife of William, and that William never had any deed from Willard; that Mrs. Mayberry had died intestate, leaving this land to descend to her son, (Stephen P.) and two daughters, the latter having quitclaimed their interest, thus acquired, to Simon H. Brown, December 21, 1869, the son's interest as heir also enuring to Brown, by way of estoppel, through the deeds to and from Isaiah Perkins. No deed from Stephen Willard to Jane Mayberry was introduced, but the tenant claimed that it had been lost or burned, in the destruction of William Mayberry's store by fire, without having been recorded; while the demandants contended that no such instrument was ever executed, but that this was an afterthought, a fictitious document, manufactured after it was discovered that the levy of Stephen P. Mayberry's execution was ineffectual, and after the deaths of the parties; and that the paper, seen by one or two witnesses, was spurious, prepared by some member of the Mayberry family, and never, in reality, signed by Willard. Samuel Tripp, register of deeds of the county, was allowed to testify to repeated visits of Stephen P. Mayberry to the registry for the purpose of making extended examinations of the records, and taking extracts therefrom, which he did, without aid from the register, except in one instance when

he looked up the proceedings in his suit against Morse & Mayberry.

Mary Ann Mayberry, called by the defence, was asked, upon cross-examination, whether or not her brother Stephen claimed the land during her mother's life, and against the tenant's objection, was allowed to testify that he did. This was permitted to test her memory.

The demandants had taken Brown's deposition, and read it to the jury, his counsel objecting, because Brown was present at the trial; but, it being offered "as a writing in reference to this case and title signed by Simon H. Brown," and not as a deposition, it was admitted. It appeared by it that Brown had never been in Sanford in his life; that Stephen P. Mayberry was his agent, through whose intervention his litigation relating to this land was carried on, and he did not know what attorney was employed, had paid none of its expenses, and did not know whether it was still pending or not, and swore that the land was situated in Alfred. He had no personal acquaintance with Isaiah Perkins; had never paid any taxes; did not have the deed in his own possession; did not know whether it was a quitclaim or warranty; said he had no other title than through the Perkins deed; denied all knowledge of any conveyance from the Mayberry girls to him; said that all the business was done through Stephen P. Mayberry, to whom he sent $500 by mail, to make the purchase, and had no conversation with Perkins himself, and did not know from whom Perkins obtained his title, or that he had any, except that Mayberry told him Perkins had a good title. He could not recollect the price he was to pay for the land; only knew that he sent the $500, and gave one note for $1,400, and another for an amount not remembered, both of which he thought were on demand, but he had heard nothing from them since they were given, and did not know where they were, nor whether or not they were ever delivered to Perkins.

A witness from Bethel, where Brown resided, was allowed to state that he had known Brown as a day laborer in a mill for sev-

eral years, occupying a hired tenement, reputed to be worthless, and having no means to the witness' knowledge, though the witness could only judge from living near by Brown as to his property. The plaintiffs also took the deposition of Henrietta W. Mayberry, but did not use it. It was read to the jury by the tenant, and the demandants objected to several interrogatories which they had themselves put to the deponent and to the answers thereto, some of which were admitted and some excluded. William and Stephen P. Mayberry were present with Brown during the trial, but none of them were called to the stand.

The verdict was for the demandants, and the tenant excepted to the various rulings adverse to him, and filed a motion for a new trial, because the verdict was against law and evidence, and a subsequent one upon the ground that it had been discovered that Samuel Mayall would testify that an attempt was made by William Mayberry to sell him the land in controversy in 1848 or 1849, and he was then shown what purported to be a deed of it from Stephen Willard to Jane Mayberry.

*R. P. Tapley*, for the tenant.

Nothing but title in the plaintiffs can prevail over the defendant's possession. Of this title an informal statement must be filed. R. S., c. 104, § 3. The plaintiffs have done this, stating the origin of their title to be Stephen Willard; and they must show a perfect connection of their title with his. No number of conveyances, disconnected with this origin, will convey the estate, because they allege the title under which they claim to have been in Stephen Willard, and the tenant is in a better condition than they are if they cannot reach that source, since they have declared, substantially, that their title being derived from Willard, they have none unless from him. Otherwise the statement is useless. Its averments being vitally material should be proved. As the plaintiffs do not connect themselves with Willard, they fail to make title; while the defendant does establish that connection between himself and Willard. The verdict, therefore, is against the evidence.

The plaintiffs should not have been allowed to exclude the questions put by themselves to a deponent, nor the replies.

The question of Brown's solvency was immaterial, and should not have been admitted. It was of no consequence, upon the present issue, whether he paid $5 or $5,000. *Leavitt* v. *Leavitt*, 4 Maine, 161; *Hovey* v. *Hobson*, 55 Maine, 275. Nor ought the acts of Stephen P. Mayberry ten years ago, testified to by Mr. Tripp, to have been admitted to our prejudice.

Brown was compelled to depose. *Bliss* v. *Shuman*, 47 Maine, 248. When he appeared in court at the trial, the cause of taking was removed; therefore, under R. S., c. 107, § 17, the deposition could not be used; nor does merely calling it by another name make it admissible.

*Ira T. Drew* and *Strout & Holmes*, for the demandants.

No deed to Jane Mayberry is proved. A wholesome recollection of the case, *State* v. *Mayberry*, 48 Maine, 218, restrained Mary Ann Mayberry from testifying to any such thing. Consequently, Brown had no title; so the admission of his statement in writing did not prejudice him; but it is simply as a deposition that it is excluded when the cause of taking no longer exists.

BARROWS, J. I. It is not always indispensable that the plaintiff in a real action should trace his title back to the first person named as owner in an informal statement of title filed by him, under the direction of the court, in pursuance of R. S., c. 104, § 3. It is sufficient if he goes back in the line indicated far enough to show a better title than the defendant. To hold otherwise would often needlessly protract and complicate trials.

The alleged failure of the plaintiffs to show title in themselves from Willard cannot avail the defendant.

II. The question put to Mary Ann Mayberry in cross-examination was within the discretion of the presiding judge as a proper test of the memory and truthfulness of the defendant's witness, were it not admissible on other grounds. But the defendant put in as a muniment of title a conveyance of the property in dispute

made by Stephen P. Mayberry, to whom the question related; and it was part of the plaintiffs' case to establish the fact that the defendant's title accrued through the fraudulent contrivances of this man, and thus his acts and doings in relation to the property were pertinent, as we shall have occasion hereafter more fully to observe and show. The proof of fraud generally consists of proof of acts and omissions inconsistent with the pretences put forth by the fraudulent actors. Viewed in this light the question had a legitimate bearing upon the case, whether the answer afforded the inference anticipated or not.

III. When a party uses a deposition taken by his opponent, but not offered in evidence by him, he makes it his own, and his opponent has the same right of objection to the interrogatories and answers which he would have had if the deposition had been taken by the party offering it; and he is not precluded by the fact that the interrogatories objected to were propounded by himself when the deposition was taken. Considered as questions propounded by the party using her deposition, the questions put to Henrietta Mayberry were rightly excluded.

IV. In order to understand how the testimony of Timothy Shaw, Samuel Tripp and Cyrus M. Wormell became relevant and admissible against the defendant's objection, it is necessary to revert to the respective positions of the parties. The plaintiffs claimed that the land in controversy was conveyed by Willard to Benjamin Morse and William Mayberry by a deed never recorded, and now either lost or in the possession of the Mayberry family, who, (they assert) are the defendants in interest in this case.

The plaintiffs derive their title through a quitclaim deed of William Mayberry, made and delivered to Morse in 1856, in pursuance of an award of referees who were selected to determine all matters in controversy between said Morse & Mayberry, and thence through a warranty deed from said Morse to Thomas Hobbs given May 27, 1857. The defendant offers in support of his claim a deed from Stephen P. Mayberry to one Perkins, given in 1858, purporting to convey the title acquired by him by a levy made

November 12, 1857, upon an execution against Morse and William Mayberry. But he also relies upon a quitclaim deed from Mary Ann and Henrietta Mayberry, purporting to have been given in the fall or winter of 1869, and thereupon he claimed that the original deed from Willard, which he says is lost, was made not to Morse & Mayberry but to Jane Mayberry, who died in 1860, the wife of William, and mother of Stephen P., Mary Ann, and Henrietta Mayberry, who still compose one family. The defendant is a kinsman of the Mayberrys. His own admissions, put in evidence by the plaintiffs, show that he took his title to the valuable lot here in controversy without even having been in the town where it is situated, upon the recommendation of Stephen P. Mayberry, of whom he speaks as his agent in matters apparently connected with this, and by and through whom he transacted most of the business relating to his alleged purchase of the lot, and that he did not know of the existence of the deed of Mary Ann and Henrietta to himself until long after the time when it purports to have been given, although he spent a fortnight with the family in the fall of 1870, which was a year subsequent to its date. In fine, there is much in his own account of his connection with this business that tends to justify the inference that he is but the representative of Stephen P. Mayberry herein. The plaintiffs contend that whatever there is of testimony tending to prove the existence of a deed from Willard to Jane Mayberry was fraudulently created by Stephen P. Mayberry, when he found that his title under the levy upon the lot as the property of Morse & Mayberry must fail for want of a valid attachment; and, if the jury were satisfied by the admissions of the nominal defendant, taken in connection with the other evidence in the case, that Stephen P. Mayberry was in fact the defendant in interest, all his acts and doings touching the premises and even his declarations became pertinent. *Bigelow* v. *Foss*, 59 Maine, 164, and cases there cited.

Looking now at the testimony objected to, we remark that Shaw's testimony, respecting the names of the parties between whom he acted as arbitrator, was as to a purely collateral fact of

trifling importance, if any,—one which might well be proved by parol, though there was written evidence of it, because it does not come within the reason of the rule which calls for primary evidence, which is declared by good authority to be "the presumption of fraud arising from its non-production."

It could matter little here who the parties were, and the evidence seems to have been offered by way of inducement to the more pregnant fact that Stephen P. Mayberry was then and there present and testified under circumstances which made it apparent that he must have known of the deed from his father to Morse of his interest in the land in controversy. Shaw's testimony as to the finding of the referees was competent, as elucidating the circumstances under which this deed was delivered. It took its place with other circumstances developed in this trial, of greater or less importance, tending to show that the idea of a deed to Jane Mayberry was an afterthought to supplement the title by levy which must otherwise fail. It was not objectionable as secondary, for there is no reason to believe that such a matter would appear in the report of the referees. One of the questions to be settled between these parties was whether there was any force and effect in the conveyances of the Mayberrys to this defendant by reason of a pre-existing but lost deed from Willard, the original owner, to Jane Mayberry. It was remote and secondary proof that the defendant relied on to support his hypothesis. It was competent to meet it by proof of circumstances which tended to counteract the inferences that might otherwise be drawn from such testimony as the defendant produced.

From this review of the position of the parties and the case, we see the admissibility of Tripp's testimony to the long and oft-repeated searches of Stephen P. Mayberry in the records, and of Wormell's to the poverty and consequent inability of Simon H. Brown to make any such purchase as these conveyances to him, if *bona fide*, would indicate.

V. The plaintiffs, soon after the commencement of the suit, had summoned the nominal defendant and taken his deposition con-

taining some damaging admissions tending to show that he was a mere instrument in the hands of others and not the *bona fide* owner of the lot which he claims, and not at that time well instructed in the part he was to play. The exceptions state that when the plaintiffs offered this deposition, defendant's counsel said he would take the ruling of the court upon its admissibility, "defendant being in court." It does not distinctly appear whether he was in fact in court, but we think the fair construction of the exceptions is that he was—though neither he nor Mayberry, who appear to have attended the taking of some of the depositions and at consultations with counsel, offer to testify in the case. But that question should have been settled upon the spot unless the ruling was to be made upon the hypothesis that he was in court when his deposition was offered. Thus we have considered it, and are satisfied that, offered as this was, not as a deposition, but as a writing signed by the opposite party containing admissions of which the plaintiffs desired to avail themselves, it was rightly received.

The defendant relies upon R. S., c. 107, § 17, which provides that a deposition shall not be used at a trial if the adverse party shows that the cause for taking it no longer exists. This we think means simply that it shall not be used as a deposition. The obvious design of the provision was to secure, where it was practicable, the more satisfactory test of the credibility of a witness by an examination before the jury in open court. The reason of the enactment has no application to the deposition of an opposing party who can have no temptation to pervert the truth against himself. It was only as a paper containing his written admissions that the deposition was offered and received. However obtained, they were competent evidence, subject to such explanations or additions as he might be able to make. It was not as a witness that the plaintiffs proposed to present him to the jury.

Take another case where a similar question might be supposed to arise. A witness who has given his deposition at the request of one party is subsequently induced by the opposite party to attend

court and give testimony in his behalf. If it conflicts with that which he has previously given, we think it would be a misuse of the statute to hold that it prohibits the party who took the deposition from reading it as he might any other written statement of the witness to affect his credibility. It is its use as a deposition only which is prohibited. Any other legitimate use which the party taking can put it to is not forbidden. This disposes of all the matters to which our attention has been directed in the exceptions.

The motion to set aside the verdict as against law and evidence cannot prevail.

The evidence called newly discovered bears upon its face sufficient proof that with reasonable diligence it might have been had at the trial. *Motion and exceptions overruled.*
*Judgment on the verdict.*

APPLETON, C. J., WALTON, DICKERSON, VIRGIN and PETERS, JJ., concurred.