## SUDWORTH v. MORTON.

1. PLEADING—VARIANCE—FRAUD—AGENTS.
   A declaration for fraud, alleging that false representations were made to plaintiff who paid his money relying thereon, is supported by proof that the representations were made to and the money paid by plaintiff's duly authorized agent.

2. FRAUD—COLLUSION—JOINT DEFENDANTS.
   Evidence in an action, on the ground of fraud, against a land company and its agent to recover money paid for a tax title examined, and *held* to warrant recovery against both on the ground of collusion in misrepresenting facts.

3. STIPULATIONS—ENFORCEABILITY.
   Oral stipulations between counsel to admit the genuineness of certain signatures are unenforceable.

4. APPEAL AND ERROR — CURING ERROR — FACT SUFFICIENTLY PROVED.
   Efforts of counsel to show an oral stipulation of the genuineness of certain signatures are not prejudicial where their genuineness is sufficiently proved by oral testimony.

5. FRAUD—EVIDENCE—ACTS OF JOINT DEFENDANTS.
   Where, in an action to recover money alleged to have been paid for a tax title in reliance on fraudulent representations, the evidence warrants a finding that both defendants engaged in a common enterprise to obtain the money so paid, the acts of each are admissible against the other.

Error to Washtenaw; Kinne, J. Submitted July 27, 1904. (Docket No. 88.) Decided September 14, 1904.

Case by George B. Sudworth against Hudson T. Morton and the Wolverine Land Company for fraud and deceit. There was judgment for plaintiff against defendant Morton, and Morton brings error. Affirmed.

*Frank E. Jones*, for appellant.

*J. W. Bennett* and *Arthur Brown*, for appellee.

HOOKER, J. The plaintiff derived title to the premises in question by purchase from one Noble, whose title came through the foreclosure of a mortgage given by McMahon, the prior owner. In 1875 defendant Hudson T. Morton received a tax certificate for $74.44, and in 1876 another for $70.32 on his purchase at the tax sales for said years. In 1901 Morton filed with the auditor general his affidavit of ownership and loss of said certificate, and obtained auditor general's deeds upon them, and subsequently quitclaimed his interest in the land to the Wolverine Land Company, his codefendant. At this time the plaintiff was not a resident of Ann Arbor, where the property is situate and the defendants reside. The property was in charge of his mother, Mary E. Sudworth, who was his agent, and she had authority to care for, rent, and do other things necessary for the preservation of the property; her acts in the transaction upon which this action arose, being also approved and ratified by the plaintiff afterwards. After its purchase from Morton, an officer of the Wolverine Land Company called upon Mrs. Sudworth, and stated that it had a valid title to the premises, and suggested a settlement and quitclaim by them for $500. It is unnecessary to repeat the particulars of the negotiations further than to say that she called upon Morton, who had been a friend of her family, and he advised her to settle the matter, as it would be cheaper than to contest it, and volunteered to induce the land company to accept $200, which he did, and the matter was so settled. She paid the $200 from her own funds, for the benefit of her son, taking a deed to him from the land company, and the plaintiff afterwards repaid her. Morton received $148.74 from the land company for his deed. Subsequently this action was brought against the two defendants, the declaration charging fraud and deceit by them in filing said affidavits and taking and making said deeds, and in representations to the plaintiff that Morton had lost said certificates and was the owner of said titles, and that by his conveyance to the land company it acquired a good and clear title to the

premises, and thereby obtained from him said sum of $200, while in fact Morton was not the owner of said certificates at the time he made the affidavits and deed, but had previously assigned the certificates to Mrs. Noble, plaintiff's grantor, for a valuable consideration. Upon trial a verdict was rendered against defendant Morton who has brought error.

Counsel for defendant says that the principal question upon this record grows out of a variance between the declaration and proof. It is claimed that the proof shows that no representations were made to the plaintiff, nor was he deceived and induced to pay money to defendants; that the entire transaction was with his mother; that she only, if any one, was deceived; and that it was her money, and not his, that was paid. We are satisfied that there was proof to go to the jury if the allegation was sufficient, and we think that it was. The defendants' deal was with the plaintiff, through his agent. The representations to the agent were representations to the principal, who acted upon them through the agent, who was not only authorized, but whose act was ratified. The money was paid for the plaintiff, and between him and the defendants it was his money that they received. Pleadings in actions at law state things according to their legal effect. Hence, when the declaration states that the representations were made to the plaintiff, who paid his money, it is sufficient, though the fact be that the parties dealt through an agent.

Counsel cite many cases analogous to this, to a few of which we will allude.

Thus a declaration which charges a defendant with having negligently driven his cart against plaintiff's horse is supported by evidence that a servant drove the horse. *Brucker* v. *Fromont*, 6 T. R. 659; *Turberville* v. *Stampe*, 1 Ld. Raym. 264.

In *Livermore* v. *Herschell*, 3 Pick. 33, an action for fraud, the court held that though the fraud was perpetrated by an agent, it might be alleged as the act of the principal, "according to the well-established rule that

every act may and should be alleged according to the legal effect."

In *Bank of Metropolis* v. *Guttschlick*, 14 Pet. 19, the Federal Supreme Court said:

"It is a rule in pleading that facts may be stated according to their legal effect. Now the legal effect of an agreement made by an agent for his principal, whilst the agent is acting within the scope of his authority, is that it is the agreement of the principal. * * * This principle has been applied too in actions ex delicto as well as ex contractu."

So in New York, in the case of *Bennett* v. *Judson*, 21 N. Y. 238, a case of deceit, the court said:

"The complaint in setting forth the cause of action counts upon false representations made by the defendant, without any reference to the agent. This mode of stating the case, we think, was proper under any system of pleading. The same rule of law which imputes to the principal the fraud of the agent, and makes him answerable for the consequences, justifies the allegation in pleading that the principal himself committed the wrong."

In *Santo* v. *Maynard*, 57 Conn. 157 (17 Atl. 700), an allegation that the act was done by the principal, when in fact it was done by an agent, "was all that could be required under the strictest rule of the common law."

This court made a similar holding in the case of *Regents of the University* v. *Detroit Young Men's Soc.*, 12 Mich. 138, where Mr. Justice CHRISTIANCY said:

"Had the pleader only purported to set forth the contract by its legal effect, it would not have been necessary to notice the fact that it was executed by agents; it might have been stated as executed by the defendant directly; the agency would be mere matter of proof."

See, also, *Harrington* v. *Gies*, 45 Mich. 374 (8 N. W. 87); *Hamilton* v. *Mining Co.*, 108 Mo. 364 (18 S. W. 977); *Chesapeake, etc., R. Co.* v. *Thieman*, 96 Ky. 507 (29 S. W. 357); *Illinois Cent. R. Co.* v. *Latimer*, 128 Ill. 163 (21 N. E. 7); *Wagener* v. *Kirven*, 56 S. C. 126 (34 S. E. 18); *Higbee* v. *Trumbauer*, 112 Iowa, 74 (83 N.

W. 812); *Shull* v. *Arie*, 113 Iowa, 170 (84 N. W. 1031); *Blotcky* v. *Miller* (Neb.) 91 N. W. 523; *Wolf* v. *Lachman* (Tex. Civ. App.) 20 S. W. 867. The case last cited was much like this case.

Counsel claim that no cause of action was stated or proved against Morton. The declaration seems to charge both alike, hence it must be good against both if good against either. We think it sufficient upon the question of proof. While it is true that Morton did not personally make the representations, if it was done at his instigation, as the jury might properly, and probably did, find, he is chargeable with the acts of his codefendant. We are of the opinion that there was a case to go to the jury.

Complaint is made of the statements made by counsel concerning an alleged agreement by one of defendants' counsel to admit certain signatures. The ruling of the court was correct, and plaintiff's counsel were not entitled to have the alleged agreement enforced. It might have been better to have submitted without protest to the rule, which he ought to have understood, that oral stipulations of that character cannot be regarded, even if they were made; but we think no harm came of his failure to do so. The fact seems to have been satisfactorily proven, and is apparently undisputed.

Counsel also complain of some strictures upon the character and conduct of Morton, but we think they do not call for a reversal of the case.

The motion for new trial was properly denied. It may be that the jury found the defendants engaged in a common enterprise, viz., inducing a purchase of this title for their mutual benefit, and all that each did was admissible. The land company acted through its officers and agents. It could act no other way, and anything that was done in the transaction was a part of the res gestæ.

The judgment is affirmed.

The other Justices concurred.