McDONALD v. SMITH.

139    211
e139   226
139    211
f150  ¹244
139    211
¹158  ²¹135

1. FRAUD—PLEADING—DECLARATION—WAIVER.
   That a declaration for fraud does not expressly charge that the alleged false representations induced plaintiff to part with his property is not available after plea of the general issue, where there is a sufficient charge by inference.

2. SAME—EXPRESSION OF OPINION—ACTIONABLE DECEIT.
   A representation that a worthless medicine, in the manufacture of which plaintiff was induced to invest, is a sure cure for a certain malady, is not a mere expression of opinion, but is a misrepresentation of fact, and is actionable.

3. SAME—SUFFICIENCY OF EVIDENCE.
   In an action for fraudulent conspiracy, whereby plaintiff was induced to invest in the manufacture of a worthless medicine, evidence examined and *held*, to justify a finding that plaintiff in error was a party to the conspiracy.

4. SAME—STATUTE OF FRAUDS.
   Where a corporation, in the worthless stock of which plaintiff was induced to invest, was only an instrument in the scheme of fraud by which defendants obtained plaintiff's property, the statute (§ 9518, 3 Comp. Laws) requiring representations "made concerning, etc., any other person * * * to be made in writing," has no application.

5. SAME—ACTION—EVIDENCE—OBJECTIONS.
   An objection that certain acts of misconduct shown have no relation to the fraud complained of, must be made on the ground of relevancy, and not on the ground that they are not averred in the declaration.

6. SAME—EVIDENCE—ADMISSIBILITY UNDER PLEADING.
   Specific acts of misconduct relevant to prove a charge of fraud may be shown, though not averred in the declaration. Plaintiff is not required to plead his evidence.

7. SAME—UNPERFORMED PROMISES.
   Plaintiff may show that as a part of the fraudulent scheme complained of defendants made him certain promises and failed to perform them, though the promises were void as against public policy.

8. SAME—INSTRUCTIONS.
   A charge that the jury may consider a promise and its nonperformance as evidence in the case is not equivalent to charging that the breach of the promise, standing alone, is evidence of the fraud forming the basis of the action.

9. SAME—NECESSITY OF REQUEST.
   Where evidence of a promise and of its nonperformance is admitted on the issue of fraud, defendant, if he wishes a charge that the promise and nonperformance are not of themselves evidence of the fraud, should prefer an appropriate request.

10. SAME—ADMISSION OF EVIDENCE—HARMLESS ERROR.
    The admission of evidence of declarations respecting past transactions made by other parties to an alleged conspiracy is harmless to defendant, who shows the same matters by his own testimony.

11. EVIDENCE—MATTER OF RECORD—PROOF BY PAROL.
    Parol evidence is inadmissible to prove the transfer of an interest in land.

12. SAME—PREJUDICIAL EFFECT.
    Parol evidence of a transfer of land is not prejudicial, where the deed is subsequently put in evidence.

13. FRAUD — INDUCING CONVEYANCE OF PROPERTY — PERSON ENTITLED TO RECOVER.
    A party may recover damages for fraud inducing a conveyance of property, although the property conveyed stood in the name of, and was conveyed by, another, where such conveyance was made on behalf of the defrauded party.

14. SAME—DECLARATION—SUFFICIENCY.
    An objection that the property alleged to have been conveyed by plaintiff, as a result of an alleged fraudulent conspiracy, is not specifically described in the declaration, must be taken by special demurrer, it being described generally as a house and lot in a certain city.

15. DEPOSITIONS—USE BY ADVERSARY.
    A party may use depositions taken by his adversary. Circuit Court Rule 41 *a*.

16. SAME—THEORY OF ADMISSIBILITY—HARMLESS ERROR.
    Permitting a party to read depositions taken by his adversary, on the theory that they constitute his own cross-examination of the adversary's witness, instead of evidence offered by himself, is not ground for reversal, where there is nothing in the

depositions which would not be admissible if the party offered them as his own evidence

17. Witnesses—Contradiction.
A party may maintain the truthfulness of his own testimony although it is contradictory to the testimony of his witnesses.

18. Appeal and Error — Record — Necessity of Showing Error.
Where a party reads from the depositions of his adversary, his failure to read the direct examination of the witnesses cannot be held prejudicial on error, where the direct examination is not shown by the record.

19. Depositions—Use by Adversary—Omissions.
Where a party reads the cross-examination of witnesses from depositions taken by his adversary, the latter, if he wishes their direct examination read, should read it himself.

20. Conspiracy—Fraud—Liability.
Persons who conspire to perpetrate a fraud are responsible for false representations made in furtherance of that scheme, although not expressly authorized by all the conspirators.

21. Evidence—Harmless Error.
The improper admission of a note in evidence is harmless where no recovery is allowed on it.

22. Instructions—Issues—Incorrect Statement.
Error in respect to nonessential matters in stating plaintiff's claims is not available to defendant on error, where he did not direct the court's attention to the misstatement at the time, and before the case was submitted to the jury.

23. Fraud—Expression of Opinion—Actionable Deceit.
An offer to buy stock, accompanied by the statement that the party had investigated it enough to know that he wanted some of it, by which it was falsely implied that the party knew facts making the stock valuable, was more than a mere expression of opinion, and was actionable.

24. Same—Misrepresentations—Inducement.
A fraudulent misrepresentation inducing plaintiff to invest in more stock of a corporation is actionable, though he had previously invested therein.

25. Same—Definition—Instructions.
A charge on the issue of fraud that a statement must be intended to deceive, calculated to deceive, and must actually deceive, sufficiently charges that it must be material.

26. INSTRUCTIONS—CORRECT IN SUBSTANCE—REVERSAL.

> The court will not reverse a case because of error in the charge arising from a technical omission in a definition substantially correct.

27. SAME—WEIGHT OF EVIDENCE—FAILURE TO TESTIFY.

> A charge that the jury should give such weight as they saw fit to defendant's failure to take the stand, while not strictly accurate, was *held* not to be erroneous when considered with a part of the charge, immediately following, which placed on plaintiff the burden of establishing his claim by a fair preponderance of evidence.

28. APPEAL AND ERROR—AFFIRMANCE ON CONDITION—REMITTITUR
—DAMAGES IMPROPERLY ALLOWED.

> In an action for fraud, a judgment for plaintiff, which, while otherwise correct, improperly included damages for a conveyance which was established by incompetent evidence, was affirmed on condition of a remittitur of the value of the property claimed to have been conveyed.

Error to Hillsdale; Chester, J.   Submitted January 12, 1905.   (Docket No. 47.)   Decided February 28, 1905.

Case by John P. McDonald against George N. Smith, Albert B. Cummins, and Darius W. Gunn for fraud. There was judgment for plaintiff, and defendant Smith brings error.   Affirmed conditionally.

*F. M. Hall* and *F. A. Lyon* (*Dallas Boudeman*, of counsel), for appellant.

*Frankhauser & Cornell* (*Grant Fellows*, of counsel), for appellee.

CARPENTER, J.   Plaintiff brings this suit to recover damages resulting from an alleged fraud perpetrated by defendants.   It is plaintiff's claim that he was the victim of a fraudulent conspiracy planned and executed by defendants and their confederates.   This scheme of fraud, which plaintiff claims is established by the testimony, may be briefly described as follows:

A corporation was formed, called the "B–T Company,"

whose sole property consisted of a formula for the manu-
facture of a worthless medicine called the "Hog Cholera
Medicine." Partly by false representations, and partly by
promises which were never intended to be, and which were
not, performed, defendants and their confederates induced
plaintiff to believe that said worthless medicine was a sure
cure for the disease known as "hog cholera," and to invest
from time to time in the stock of said company money and
property of the aggregate value of $7,300. Said money
and property did not go to the corporation—whose organi-
zation was merely a step in the scheme of fraud—but went
directly to defendants or to their confederates. The liabil-
ity of defendant Smith is asserted, not on the ground that
he himself defrauded plaintiff, but on the ground that he
was a party to a fraud perpetrated by his codefendants and
their confederates. The evidence that those codefendants
and their confederates conspired to defraud plaintiff is very
convincing, and there is evidence that Smith was on terms
of familiar intimacy with them at the time they were most
active in perpetrating the fraud. It also appears that cer-
tain stock in the Hillsdale Manufacturing Company, which
was the first property fraudulently obtained from plaintiff,
passed almost immediately to the ownership of defendant
Smith. Smith contends that he paid full value for this
stock. He paid for it in part by a transfer of land in
which he had a mortgage interest subject to redemption.
If we value this property—and we must so value it—at
what was unpaid on the mortgage, Smith paid for the
stock only two-thirds of its value. We are therefore
bound to say that defendant Smith acquired this stock for
two-thirds of its value. Later, when plaintiff was con-
templating his last investment in the worthless stock, de-
fendant Smith told him that he had investigated the mat-
ter, and would buy his stock at 150 per cent. of its par value.
It is impossible to believe that this offer—which plaintiff
could not accept because of an arrangement he had made
with defendant Cummins—was made in good faith. Still
later, defendant Smith, as plaintiff's testimony tends to

prove, purchased, for less than its value, a note given by plaintiff and his mother to secure payment of part of an obligation arising from the last fraudulent transaction. (This note is involved in the succeeding suit, and the particulars relative to its execution will there be more fully explained.) On this issue plaintiff obtained in the lower court a verdict and judgment against all the defendants. We are asked to review that judgment upon a writ of error taken out by defendant Smith. He makes numerous complaints, which, so far as needful, will be stated and discussed in this opinion.

1. It is contended that the declaration, notwithstanding the fact that defendant has pleaded the general issue, was insufficient to justify the introduction of any testimony. Defendant's principal objection to the declaration—and his other objections are of like character—is that it contains no averment that the alleged false representations induced plaintiff to part with his property. The declaration, which consists of 56 printed pages, does, however, clearly state a cause of action. If the averment in question is not charged in precise language, it is charged by inference. We therefore hold that defendant should have raised this objection —and this is true of the remainder of his objections to the declaration—by special demurrer, and that it cannot be considered after he pleaded the general issue. See *Briggs* v. *Milburn*, 40 Mich. 512; *Aldrich* v. *Chubb*, 35 Mich. 359; *Sutton* v. *Van Akin*, 51 Mich. 465.

2. Appellant claims that a verdict should have been directed in his favor. We dispose of these claims by saying :

(*a*) It cannot be said that all the alleged false representations were expressions of opinion and therefore not actionable. Some of them, particularly the representation that the worthless medicine was a sure cure for hog cholera, were, under our decisions, misrepresentations of fact and actionable. See *Nowlin* v. *Snow*, 40 Mich. 699; *Totten* v. *Burhans*, 91 Mich. 495; *Stoney Creek Woolen Co.* v. *Smalley*, 111 Mich. 321.

(*b*) The evidence justified the jury in finding that defendant Smith was a party to the fraudulent conspiracy.

(*c*) As the evidence in this case justified the inference that the corporation whose worthless stock plaintiff acquired was only an instrument in the scheme of fraud by which defendants and their confederates obtained plaintiff's. property for their own exclusive use, the statute (section 9518, 3 Comp. Laws) requiring representations "made, concerning, etc., any other person * * * be made in writing," has no application. See *Bush* v. *Sprague*, 51 Mich. 41.

3. It is contended that the court erred in many particulars in admitting testimony offered by plaintiff.

(*a*) Complaint is made because the court permitted plaintiff to prove various acts of misconduct on the part of defendant not charged in the declaration. Plaintiff did not claim that any of these acts which were not averred constituted—and none of them did constitute—a cause of action. It is possible that some of these acts had no relation to the fraud complained of. If so, evidence to prove such facts should have been objected to on the ground of irrelevancy. That objection is not raised by defendant's complaint that they are not averred in the declaration, nor by any other complaint in defendant's brief. Assuming those acts of misconduct to be, as most of them were, relevant evidence to prove the charge of fraud, the complaint under consideration is answered by the elementary rule that the plaintiff should not state in his declaration evidence which he intends to offer in support of its averments.

(*b*) Plaintiff was permitted to prove that, in connection with the other fraudulent representations, defendants promised him that he should be secretary and treasurer of the newly-formed corporation, and receive therefor a salary of $1,200 per year. Complaint is made because plaintiff was permitted to prove that this promise was not in fact performed. In support of this complaint defendant relies upon *Hubbard* v. *Long*, 105 Mich. 442. In that case plaintiff charged that defendant had fraudulently in-

duced him to purchase stock in a bona fide and operating corporation. He was promised a position in this corporation at a salary of $25 per week. He was permitted to prove the breach of this promise, and what he had been earning before he purchased his stock. This court held it was error to permit this testimony to be introduced, on the ground that a breach of promise "is not of itself either fraud or the evidence of fraud." That decision does not apply in a case like that at bar, where a fraud has been accomplished, in part by false representations and in part by false promises. In such a case the promises must be admitted in evidence, because they are inseparably connected with the representations of fact. After a defrauded party has proved those promises, he is the victim of a legal snare, if denied the right to prove that they were never performed. Such a denial would compel the jury to act upon the assumption that the promises were performed, and thus defeat plaintiff in his justifiable attempt to obtain redress.

In this connection we should not overlook the contention of defendant, sustained by authority (see 1 Cook, Stock, Stockh. & Corp. Law [3d Ed.], § 622) and upheld by the trial court, that the promise to employ plaintiff was contrary to public policy, and therefore void. If this contention is sound, the promise to employ plaintiff was a nullity, and for that reason could not be the basis of an action; but it was none the less inseparably connected with the false representations of fact, and, under the foregoing reasoning in this opinion, was admissible in evidence. If plaintiff proved such a promise, he had a right, under our reasoning, to show that it was not performed. For, although the promise was unenforceable, the jury might infer that defendant performed it, and plaintiff had a right to rebut this inference.

At this point we should notice defendant's complaint that the trial judge charged the jury that the breach of this contract could be used as evidence of fraud. What the trial court charged was this: "You may consider

this [referring to the promise and its nonperformance] evidence in this case." Surely this was not equivalent to saying that the breach of the contract, standing alone, was evidence of fraud. Had defendant wished to raise that question, he should have preferred some appropriate request. Our attention is called to no such request.

(c) Complaint is made because plaintiff was permitted to prove declarations respecting past transactions made by other parties to the alleged conspiracy. These declarations related to defendant Smith's acquisition of the stock in the Hillsdale Manufacturing Company. We are bound to say that their admission, if erroneous, was not prejudicial, because the declarations merely tended to prove facts which we must regard as established by defendant's own testimony.

(d) In support of his claim that he was fraudulently deprived of certain property, plaintiff was permitted to give oral testimony, against defendant's objection, of the conveyance of a house and lot in Hillsdale valued at $2,100, a land contract covering land in Benzie county valued at $440, and of a peach farm valued at $150. Defendant is right in saying that these transfers could not be proved by oral testimony. See *Thompson* v. *Richards*, 14 Mich. 172. The testimony showing the transfer of the Hillsdale property was not prejudicial, because a deed conveying it was subsequently put in evidence. We find, however, no written evidence in the record of the transfer of the land contract or of the peach farm. Their values constituted a part of the damages claimed and awarded. We are, therefore, compelled to say that the oral evidence to prove their transfer, viz., the transfer of the land contract and peach farm, was not only erroneously admitted, but, as hereafter pointed out, requires the reversal of the judgment, unless plaintiff remits therefrom the amount of those items and the interest thereon.

The Hillsdale house and lot stood in the name of and was conveyed by plaintiff's sister. Two objections are urged to the admission of this conveyance in evidence:

*First.* That, as the property did not belong to plaintiff, no damage resulted to him from its loss. This objection was answered in *Sudworth* v. *Morton,* 137 Mich. 575, where this court said of a similar objection: "The money was paid for the plaintiff, and between him and the defendants, it was his money that they received."

*Second.* It is objected that this property was not particularly described in the declaration. We answer this by saying it was there described in general language as a house and lot situated in the city of Hillsdale, and, if defendant had desired to have a more specific description, he should have specially demurred to the declaration. See *Fuller* v. *City of Jackson,* 82 Mich. 481.

(*e*) Plaintiff was permitted, against objection, to read on the trial his cross-examination of two witnesses whose depositions had been taken by defendants. Though these depositions had been taken by defendants, Circuit Court Rule 41*a* gave plaintiff a right to read them. See *Fountain* v. *Ware,* 56 Ala. 558; *Hatch* v. *Brown,* 63 Me. 410; *Juneau Bank* v. *McSpedon,* 15 Wis. 629; *Morrison* v. *Insurance Co.,* 59 Wis. 162; *Converse* v. *Meyer,* 14 Neb. 190; *Calhoun* v. *Hays,* 8 Watts & S. (Pa.) 127.

Appellant complains because the trial court decided that plaintiff had a right to read this testimony, on the theory that it was his cross-examination of witnesses produced by defendants. He contends that this theory was unsound, and asserts that plaintiff was bound to use these depositions as evidence offered by himself, and authorities are cited which sustain this contention. See *Fountain* v. *Ware; Hatch* v. *Brown,* supra. If this contention is sound, it discloses error in the views of the trial court; but that does not justify a reversal of the judgment, unless it led to some result prejudicial to defendants. See *Polhemus* v. *Ann Arbor Savings Bank,* 27 Mich. 44. Defendant's brief points out nothing in the testimony read by plaintiff which would not have been admissible if he had offered it as his own evidence. Our own examination of such testimony discovers nothing not so admissible. The most

questionable part of this testimony was a letter written by one of the witnesses to plaintiff, in which the writer admits the worthlessness of the hog cholera medicine. We think it was necessary, and therefore proper, to read this letter, to enable the jury to understand the material testimony of said witness with which said letter was inseparably connected.

It is true that plaintiff was permitted to maintain the truthfulness of his own testimony notwithstanding the fact that it was contradicted by the testimony read from these depositions. Defendants cannot complain of this, for plaintiff would have had the same right if he had offered this testimony himself.

It is also true that plaintiff did not read from the depositions the direct examination of the witnesses. As that direct examination is not shown by the record, we cannot say that this omission was injurious to defendants. It may also be said that defendants should themselves have read this direct examination if it was to their interest to have it read. See *Morrison* v. *Insurance Co.; Converse* v. *Meyer*, supra. We conclude, therefore, that no injury resulted to defendants from the reading of these depositions.

4. Refusal of Defendant's Requests. Defendant in his brief contends that the court erred in refusing his requests to charge. Several of those requests asked the court to direct a verdict for defendant. It follows, from the former part of our opinion, that these were properly refused. One of these requests asserts that defendants were not responsible for false representations, unless made "by authority of all the defendants." If defendants conspired to perpetrate a fraud on plaintiff—and the jury had a right to find that they did—they would be responsible for false representations made in furtherance of that scheme, though not expressly "authorized by all the defendants," and therefore this request was properly denied. See *Gumberg* v. *Treusch*, 103 Mich., at page 554; *Hamilton* v. *Smith*, 39 Mich., at page 231.

Other requests sought to point out variances between the allegations of the declaration and plaintiff's proofs. One of these alleged variances related to the note involved in the next suit, and this is sufficiently answered by saying that plaintiff was not permitted to recover for said note. It is sufficient to say of the other objections of variance that defendant points out no substantial difference between the allegations in the declaration and plaintiff's proofs. We conclude that there was no error in the refusal of defendant's requests to charge.

5. Charge of the Court. Defendant charges that the trial court did not correctly state plaintiff's claim to the jury. The errors of statement pointed out in defendant's brief relate to matters not of the essence of plaintiff's claim. His complaint may be answered by quoting from a former opinion of this court:

"If the statement of the court was incorrect, it was counsel's duty then and there, before the case was finally submitted to the jury, to direct the attention of the court to the fact. Not having done so, it must be presumed that the court was correct, and counsel cannot now be permitted to contend otherwise." *Wood* v. *Wells,* 103 Mich., at page 323.

The court charged the jury, in effect, that fraud might be predicated upon defendant Smith's proposition to buy plaintiff's stock, accompanied by his statement that "he had investigated it enough to know that he wanted some of it." Defendant contends that this representation was a mere expression of opinion, and therefore not actionable. The rule that expressions of opinion do not constitute actionable fraud (*Myers* v. *Building Ass'n,* 117 Mich. 389; *Chafey* v. *Mathews,* 104 Mich. 103 [27 L. R. A. 558]), which is a rule subject to exceptions (see *French* v. *Ryan,* 104 Mich. 625), "is applicable only when the opinion stands by itself as a distinct thing." See *People* v. *Peckens,* 153 N. Y. 593. And it has been said by an eminent jurist:

"It is material to observe that it is often fallaciously assumed that a statement of opinion cannot involve the

statement of a fact.   *   *   *   If the facts are not equally
known to both sides, then a statement of opinion by the
one who knows the facts best involves very often a state-
ment of a material fact, for he impliedly states that he
knows facts which justify his opinion." Lord Bowen, in
*Smith* v. *Land and House Property Corp.*, L. R. 28
Ch. Div. 15.

The statement of defendant under consideration is some-
thing more than a mere expression of opinion.   His state-
ment, coupled with his offer to buy, falsely implied that
defendant knew facts which proved the stock to be valua-
ble.   The foregoing authorities and sound principle justify
our holding such a representation actionable.   What de-
fendant said was equivalent to the false statement that he
had knowledge of facts which proved said stock to be
worth more than par.   Had he made that false statement,
his liability would be clear.   If we hold that he is not lia-
ble because he conveyed this thought in guarded language,
we point out a way by which unscrupulous men may ac-
complish fraud without responsibility.

It is also contended that the charge of the court under
consideration was erroneous because defendant's represen-
tation and offer to purchase the stock worked no prejudice
to plaintiff, as he had made his investments before this of-
fer was made.   It is true that he had before that time in-
vested in the stock, but after that he made another invest-
ment, and it is to be presumed that the court, in saying that
fraud might be predicated on this conduct of defendant
Smith's, referred to the subsequent investment.

In charging the jury, the court defined fraud "as a
false statement or statements made for the purpose of
inducing another to part with money or other valuable
things, which statements are calculated to influence the
person to whom they are made, and which statements do
actually deceive the person to whom they are made, and
thereby induce him to part with money or other valuable
things."   Defendant contends that this definition is faulty
because it omits to state that the representation must be

material and relate to a fact, either present or past. By instructing the jury that the statement must be intended to deceive, calculated to deceive, and must actually deceive, the court sufficiently informed them that it must be material. Nor is it true, as we have just shown, that fraudulent statements must always relate to facts, and, if it were, we would not reverse the case because of such a technical omission in a definition which is substantially correct.

Complaint is made because the court charged the jury:

"The defendant Gunn has been represented by counsel, and was present in court the first day of this trial, and has since been absent. The defendant Smith has been in court during the trial, but has seen fit to decline to take the stand, and I charge you, gentlemen, that the unexplained failure of Gunn and Smith to take the stand and give evidence here may be given by you such weight as you see fit. And it is a legitimate fact for you to consider in determining the merits of this case."

It was not strictly accurate to tell the jury to give "such weight as you see fit" to the failure of defendants to take the stand. If this expression stood alone, it might lead the jury to the erroneous belief that they might infer from defendants' silence some essential fact which they could not infer from the testimony. But taking this language in connection with that part of the charge immediately following, which placed the burden upon the plaintiff of establishing "the claim which he asserts by a fair preponderance of the evidence," we think the jury would understand that they could consider defendants' failure to give testimony only in drawing inferences from and in weighing plaintiff's testimony. So understood, the charge was not erroneous. In *Mooney* v. *Davis*, 75 Mich. 188, defendant, though in court during trial, saw fit to offer no testimony. It was held that it was not error for the court to charge the jury that defendant's silence "may be considered by you as to one of the facts in this case as to

whether the position of the plaintiff is in accordance with the facts."

No other complaint in appellant's brief demands consideration. We conclude, therefore, that if plaintiff chooses to remit from his judgment $590, the aggregate values of the land contract and peach farm, together with interest thereon, the judgment should be affirmed; otherwise, it should be reversed. In either event, appellant is entitled to costs.

MOORE, C. J., and MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.