FOREMAN v FOREMAN

Docket No. 250412. Submitted January 12, 2005, at Detroit. Decided May 3, 2005, at 9:00 a.m. Leave to appeal sought.

Renelle Foreman brought an action in the Oakland Circuit Court against Dennis W. Foreman, her ex-husband, seeking damages for fraud involving representations the defendant had made during mediation of the parties' property settlement in divorce proceedings and concerning the value of an automobile dealership, the defendant's intention to continue owning the dealership, and his intention to keep the parties' vacation home after buying the plaintiff's ownership in the home. The property settlement agreement had been incorporated, but not merged, into the judgment of divorce. A jury returned a verdict and award of damages for the plaintiff on her claim that the defendant had fraudulently induced her to enter into the property settlement agreement. The court, James M. Alexander, J., denied the defendant's motions for judgment notwithstanding the verdict and for a new trial. The court had earlier denied the defendant's motions for summary disposition and directed verdict. The defendant appealed.

The Court of Appeals *held*:

1. The trial court correctly determined that Michigan law recognizes an independent cause of action for fraud where the fraud induced entry into a property settlement agreement that was incorporated, but not merged, into the final judgment of divorce. When a property settlement agreement is incorporated and merged into a divorce judgment, it becomes a disposition by the court of property. But, when not merged in the divorce judgment, the property settlement agreement may only be enforced by resort to contract remedies. In this case, the claim of fraud in the inducement is not related to seeking relief from or amending the judgment of divorce, but to the completion of the property settlement agreement.

2. In general, honest expressions of opinion may not be regarded as fraudulent. However, the facts and circumstances, and the inferences drawn from them, may be construed to demonstrate that the statements of opinion were made in bad faith by one who possessed superior knowledge respecting the matters and intended

to deceive and mislead. In this case, the jury determined that the defendant made representations of personal knowledge of the value of properties as statements of fact, prohibited accurate assessment of the value of those assets, and repeatedly represented to the plaintiff and the mediator that the value of the dealership was substantially lower than the amount for which he sold it a short time later. Also, in this case, the defendant's representations of loving the vacation home and remaining in control of the dealership for an additional eleven years were similarly deemed by the jury to be fraudulent. These fraudulent representations induced the plaintiff to enter into the property settlement agreement on terms the jury considered to be greatly to her disadvantage.

3. The trial court did not abuse its discretion in denying the defendant's motion for a new trial on the asserted ground that the plaintiff's counsel appealed to the sympathy and passion of the jury during closing argument. The trial court properly instructed the jury that statements of counsel are not evidence.

Affirmed.

1. FRAUD — DIVORCE — PROPERTY SETTLEMENT AGREEMENTS — FRAUD IN THE INDUCEMENT.

An independent action for fraud in the inducement to enter into a property settlement may exist where the agreement is incorporated but not merged into a divorce judgment; the action is not related to seeking relief from or amending the judgment of divorce, but is related to the completion of the property settlement agreement.

2. FRAUD — OPINIONS OF VALUE.

Honest expressions of opinion generally may not be regarded as fraudulent; however, the facts and circumstances surrounding an opinion on the value of an asset, and inferences drawn from them, may be construed to demonstrate that the opinion was given in bad faith by one who possessed superior knowledge respecting the matter and intended to deceive and mislead someone into entering a contract.

*Bruce T. Leitman* for the plaintiff.

*Meyer, Kirk, Snyder & Lynch, PLLC* (by *George E. Snyder* and *Patrick K. Rode*), for the defendant.

Before: GAGE, P.J., and METER and FORT HOOD, JJ.

PER CURIAM. Defendant appeals as of right a jury verdict awarding plaintiff $1,417,000. Plaintiff alleged that defendant committed fraud in connection with certain representations he made during discussions and mediation leading to the property settlement in the parties' underlying divorce action. Defendant asserts that the elements of fraud were not established, and that the trial court erred in submitting the case to the jury and allowing the verdict to stand. We affirm.

Based on a judgment entered in July 2000, plaintiff and defendant were divorced after nearly twenty-two years of marriage. As a result of mediation, the parties reached a property settlement in December 1999, which settlement was incorporated, but not merged, into this judgment. The primary marital assets were a Ford dealership owned and operated by defendant, the marital home, and a vacation home in northern Michigan referred to as the "Indian River" property. The property settlement was structured around defendant's expressed intention to keep, and not sell, his dealership, as well as on the $1.7 million value attributed to the dealership by the mediator. Very shortly after the property settlement was reached, plaintiff learned from her son that defendant was going to "sell the dealership and move to the islands." She then filed a motion challenging the agreement. At the hearing on that motion, defendant testified that the dealership was worth no more than $1.1 million and that he intended to continue operating it until he retired, which was at least eleven years. The court denied plaintiff's motion and ordered the parties to enter into the settlement agreement. Defendant undertook efforts to sell his dealership in August 2000, reaching agreement to sell it in the fall of 2000 for $6.6 million.

The Indian River property had been appraised in the early spring of 1999 for $1.25 million. After defendant represented through his lawyer that he wanted to keep this property for himself, that he loved every "nook and cranny" of the house, and that he could not bear to part with it, plaintiff agreed to let defendant buy out her share of the property. Defendant did so in October 2000, listed the property for sale within a matter of weeks, and sold it in June 2001 for $1.775 million, including contents.

Plaintiff filed this action on December 7, 2002, alleging that defendant fraudulently induced her to enter into the property settlement and the amendment relating to the buyout of the Indian River property. Although plaintiff learned through a friend that the dealership had changed ownership, she did not file this litigation at that time. Rather, plaintiff testified that defendant provided the impetus for this litigation by moving to reduce his spousal support obligation. She testified that that action caused the trial judge in the divorce case to permit discovery of the financial details of defendant's transactions involving marital property. The jury rendered a verdict in favor of plaintiff on her claim of fraud.

Defendant filed motions for summary disposition, directed verdict, and for judgment notwithstanding the verdict (JNOV), all of which were denied by the trial court. This Court reviews de novo the trial court's denial of each of these motions, viewing the record and evidence presented at trial in the light most favorable to plaintiff. *Dressel v Ameribank,* 468 Mich 557, 561; 664 NW2d 151 (2003); *Wiley v Henry Ford Cottage Hosp,* 257 Mich App 488, 491; 668 NW2d 402 (2003). Summary disposition is suspect where motive and intent are at issue or where the credibility of a witness is crucial. *Vanguard Ins Co v Bolt,* 204 Mich App 271, 276; 514

NW2d 525 (1994). Furthermore, where the truth of a material factual assertion of a moving party is contingent upon credibility, summary disposition should not be granted. *Id.*

When reviewing a trial court's decision on a motion for a directed verdict, "this Court recognizes the unique opportunity of the jury and the trial judge to observe witnesses and the fact-finder's responsibility to determine the credibility and weight of the testimony." *Wiley, supra.* Similarly, the trial court should grant a JNOV motion only if, reviewing the evidence and all legitimate inferences in favor of the nonmoving party, "the evidence fails to establish a claim as a matter of law." *Id.* at 492. When the evidence presented could lead reasonable jurors to disagree, the trial court may not substitute its judgment for that of the jury. *Id.* at 491.

Defendant also moved for a new trial below. This Court reviews the trial court's denial of that motion for an abuse of discretion. *Kelly v Builders Square, Inc,* 465 Mich 29, 34; 632 NW2d 912 (2001). "An abuse of discretion exists where an unprejudiced person, considering the facts on which the trial court made its decision, would conclude that there was no justification for the ruling made." *Szymanski v Brown,* 221 Mich App 423, 431; 562 NW2d 212 (1997).

On appeal, defendant first argues that the trial court erred in denying his motions because Michigan law does not recognize an independent cause of action for fraud arising from the divorce proceedings. We disagree.

Michigan law recognizes an independent cause of action for fraud where the fraud induced entry into a settlement agreement that was incorporated, *but not merged,* into the final judgment of divorce. *Grace v Grace,* 253 Mich App 357, 364-365; 655 NW2d 595 (2002). To avoid application of the *Grace* holding to this

case, defendant alleges that the *Grace* decision is non-binding obiter dictum. We disagree.

Like this case, *Grace* involved a claim by the plaintiff that the defendant had committed fraud in connection with their property settlement, which was incorporated, but not merged, into the final judgment of divorce. The plaintiff filed her complaint alleging fraud in the inducement of the separation agreement. *Id.* at 361. Relying on *Nederlander v Nederlander,* 205 Mich App 123; 517 NW2d 768 (1994), the trial court granted the defendant's motion for summary disposition, determining that there was no recognized cause of action for damages arising from a fraudulently induced settlement agreement. This Court, in an unpublished order, entered June 14, 1996 (Docket No. 183202), vacated the trial court's order, concluding that *Nederlander* was distinguishable because the settlement agreement in *Grace* was incorporated, but not merged, into the judgment. Therefore, the settlement agreement was a contract enforceable by ordinary contract remedies; the fraud claim related to a contract, and not to the judgment into which it was incorporated but not merged. This Court remanded the matter to the trial court and, ultimately, the case proceeded to trial, with the jury finding in favor of the plaintiff. *Grace, supra* at 361-362. The defendant sought leave to appeal to this Court. In the order granting leave, this Court instructed the parties to brief the issue whether the action was barred under *Nederlander*. *Grace, supra* at 362. In its decision on that appeal, this Court explained:

> We agree with plaintiff's contention that the law of the case doctrine applies and, consequently, we follow the prior panel's holding that plaintiff's fraud claim is not barred under *Nederlander.*

* * *

The law of the case doctrine is discretionary and expresses the practice of the courts generally; it is not a limit on their power. The doctrine will not be applied if the facts do not remain materially or substantially the same or if there has been a change in the law.

We conclude that the law of the case doctrine requires us to follow the ruling of the prior panel that *Nederlander* is distinguishable from the present action and that plaintiff could, therefore, maintain her fraud claim. The prior panel ruled on a legal issue and there has been no change in the law or a material change of the facts to dispense with the law of the case doctrine. Further, defendant availed himself of his right to appeal the prior panel's decision by seeking leave to appeal in the Supreme Court, and that application was denied. Even if we concluded that the prior panel's legal ruling was incorrect, the law of the case doctrine applies without regard to the correctness of the prior ruling. Accordingly, we hold that the law of the case doctrine applies here and we follow the prior panel's determination that plaintiff's fraud claim is not barred by *Nederlander*. [*Id*. at 362-364 (citations deleted).]

Because the parties in *Grace* were directed by the order granting leave to address whether the plaintiff's claim was precluded by *Nederlander*, "while acknowledging that the law of the case doctrine is discretionary and does not operate as a limitation on our power as an appellate court," the *Grace* Court proceeded to address the merits of the issue. The Court explained:

We agree with the prior panel's decision that the rule of *Nederlander* does not bar plaintiff's fraud claim. In *Nederlander*, this Court held that if a party suspects that the other party has committed fraud during a divorce proceeding, MCR 2.612(C)(1)(c) and (2) (relief from judgment or order) allows the party to seek redress within one year after the judgment is entered, but the party is not permitted to maintain a separate action for fraud. *Nederlander*, *supra* at 126-127.

The prior panel distinguished *Nederlander* in its June 14, 1996, order. In the present case, the separation agreement was incorporated, but not merged, into the divorce judgment. The significance of this is explained in *Marshall v Marshall,* 135 Mich App 702, 712-713; 355 NW2d 661 (1984), relied on by the prior panel in its order:

"When a property settlement agreement is incorporated and merged in a divorce judgment, it becomes a disposition by the court of the property. But, when not merged in the divorce judgment, the property settlement agreement may only be enforced by resort to the usual contract remedies and not as part of the divorce judgment."

As the prior panel held, the claim of fraud related to the separation agreement and not to the judgment of divorce into which it was incorporated but not merged. Therefore, plaintiff's remedies sound in contract and plaintiff's fraud claim is not barred by the holding of *Nederlander*. [*Grace, supra,* at 364-365.]

Despite the fact that the *Grace* decision addressed the merits of the issue, defendant relies on *McNally v Bd of Canvassers of Wayne Co,* 316 Mich 551, 557; 25 NW2d 613 (1947), for the proposition that "[w]hat is said in an opinion by way of illustration only is of no binding authority as a decision." The *McNally* Court noted that a decision is generally not precedent with regard to a point that was not sufficiently argued and presented to the court, and that it is well-settled that " 'any statements and comments in an opinion concerning some rule of law or debated legal proposition not necessarily involved nor essential to determination of the case in hand are, however illuminating, but obiter dicta' " and lack the force of a binding adjudication. *Id.* at 558, quoting *People v Case,* 220 Mich 379, 382-383; 190 NW 289 (1922). The *McNally* Court also noted:

We do not overlook the citations of defendant in this case from *City of Detroit v. Michigan Public Utilities Commission,* 288 Mich. 267, 299, 300 . . . [286 NW 368

(1939)], where some words appear to the effect that all that is necessary for a decision to be authoritative is to show application of the judicial mind to the subject. Such words are to be considered as explained or modified by the quotations immediately following ... as to the matter being germane to the issue and the fullness of the discussion and actual submission by the parties. [*McNally, supra* at 557.]

In *Detroit, supra* at 301, our Supreme Court rejected the appellants' argument that a question of law was not decided in a previous case, explaining:

There is no question that the point was before the court; that the court intended to declare the rule of law for a guide in the future; that there was an application of the judicial mind to the proposition and a thorough consideration of the subject; and that the majority of the court [reached a conclusion] with the clear intent and expressed purpose of determining this issue.

In such circumstances, the prior ruling constituted a binding resolution of the question of law. *Id.*

We observe that, while the law of the case doctrine is discretionary, expresses the practice of courts generally, and is not a limit on this Court's power, the *Grace* case did not fall within the two narrow exceptions to the application of the doctrine explicitly recognized in our case law. *Freeman v DEC Int'l, Inc,* 212 Mich App 34, 37-38; 536 NW2d 815 (1995). Thus, as the *Grace* Court noted, the law of the case doctrine "require[d the Court] to follow" the prior ruling, and the Court did not need to consider the issue anew. *Grace, supra* at 363. However, the Court ordered that the parties brief the issue, and the issue was actually submitted and decided by the Court. Further, it is clear from the opinion that the Court "intended to declare the rule of law for a guide in the future"; that is, "that there was an application of the judicial mind to the proposition and a thorough

consideration of the subject . . . with the clear intent and expressed purpose of determining this issue." *Detroit, supra* at 301. Therefore, we conclude that the *Grace* Court's ruling, that an independent cause of action for fraud lies where a settlement agreement is incorporated, but not merged, into the judgment, is not obiter dictum and does constitute binding precedent. Further, even were we to conclude that that portion of the *Grace* decision was obiter dictum, we would find the analysis and result reached in *Grace* to be persuasive and choose to follow it in this case. See *Dykstra v Dep't of Transportation*, 208 Mich App 390, 392; 528 NW2d 754 (1995). Plaintiff is not seeking relief from or amendment of the judgment of divorce. Rather, she seeks to recover money damages for fraud relating to the underlying contract, the property settlement between defendant and her. Appellate case law has established that, when not merged into the judgment, the underlying settlement agreement retains its separate identity as a contract, enforceable by resort to the "usual contract remedies." *Grace, supra* at 364-365, quoting *Marshall, supra.*

Defendant next argues that there was insufficient evidence of the elements of a fraud claim to submit the issue to the jury and support the verdict. We disagree. To establish a claim of fraudulent misrepresentation, plaintiff was required to prove that: (1) defendant made a material representation; (2) the representation was false; (3) defendant knew, or should have known, that the representation was false when making it; (4) defendant made the representation with the intent that plaintiff rely on it; (5) and plaintiff acted on the representation, incurring damages as a result. *Hi-Way Motor Corp v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976), citing *Candler v Heigho*, 208 Mich 115, 121; 175 NW 141 (1919). Plaintiff must also show

that any reliance on defendant's representations was reasonable. *Novak v Nationwide Mut Ins Co,* 235 Mich App 675, 690-691; 599 NW2d 546 (1999); *Nieves v Bell Industries, Inc,* 204 Mich App 459, 464; 517 NW2d 235 (1994).

The general rule is that honest expressions of opinion may not be regarded as fraudulent. However, whether a specific representation is classified as an expression of opinion or an actionable statement of fact is contingent upon the circumstances of each case. See *McDonald v Smith,* 139 Mich 211, 216; 102 NW 668 (1905). While expressions of opinion in good faith cannot be made the basis of recovery in a fraud action, statements of opinion made in bad faith "by one who is possessed of superior knowledge respecting such matters, with a design to deceive and mislead, the party making them must respond." *French v Ryan,* 104 Mich 625, 630; 62 NW 1016 (1895). When fraud is alleged, a wide range of evidence is permissible. *Id.* at 631. Representations by an individual who has personal knowledge of the value or condition of land or property cannot be construed as a mere expression of opinion, but rather constitute a statement of fact. See *Groening v Opsata,* 323 Mich 73, 79; 34 NW2d 560 (1948). The following rule regarding fraudulent claims is also significant:

> "It is a settled and salutary general rule that a statement of value is a mere expression of opinion and cannot be made the basis of an action of fraud. But there are exceptions to all generalities. Where a false representation of value is intentionally made to a person ignorant of value, with the purpose that such statement is to be relied upon, the representation is in the nature of a statement of fact and will support an action of fraud." [*Poloms v Peterson,* 249 Mich 306, 309; 228 NW 711 (1930), quoting *Gugel v Neitzel,* 248 Mich 312, 317-318; 226 NW 869 (1929).]

Moreover, a representation regarding what property will sell for in certain market conditions at a given price is a representation of fact. *Pratt v Allegan Circuit Judge*, 177 Mich 558, 562; 143 NW 890 (1913). An action for fraud must relate to past or existing facts, not future events. *Marrero v McDonnell Douglas Capital Corp*, 200 Mich App 438, 444; 505 NW2d 275 (1993). However, an unfulfilled promise to perform in the future is actionable when there is evidence that it was made with a present undisclosed intent not to perform. *Rutan v Straehly*, 289 Mich 341, 348-349; 286 NW 639 (1939). Furthermore, "the mere fact that statements relate to the future will not preclude liability for fraud if the statements were intended to be, and were accepted as, representations of fact, and involved matters peculiarly within the knowledge of the speaker." *Crook v Ford*, 249 Mich 500, 504-505; 229 NW 587 (1930). "Intent is a mental condition and is determined not so much by what one says as it is by what one does." *Detroit Trust Co v Hartwick*, 278 Mich 139, 152; 270 NW 249 (1936). Consequently, direct proof of fraud is not required, and fraud may be proven by inference from facts and circumstances. *Id*. Thus, where fraudulent intent is required, it need not be determined solely by words, but may be established by actions and inferences arising from them.

We disagree with defendant's assertion that his statements regarding the value of the dealership were merely statements of opinion. Indeed, case law provides that "[r]epresentations as to property value are mere expressions of opinion, especially where plaintiff can inspect the property before purchasing it." *Kamalnath v Mercy Mem Hosp Corp*, 194 Mich App 543, 554-555; 487 NW2d 499 (1992). However, in the present case, the valuation of the dealership could not be determined by an inspection alone. Rather, both parties consulted with

appraisers to determine the value of the dealership and its inventory. The evidence presented by plaintiff established that defendant, himself and through his expert, repeatedly represented that the value of the dealership was between $500,000 and $1.1 million, that plaintiff was ignorant of the value of the dealership and was not able to inspect the property in the same manner as a purchaser, and that defendant made the representations with the intent that plaintiff, plaintiff's attorney, and the mediator rely on them. *Poloms, supra.*

Plaintiff, although ignorant of the facts, attempted to take measures to assess the value of the property. It was suggested that brokers be brought in to evaluate the property to determine an accurate value where the appraiser testimony between the parties diverged substantially. However, defendant adamantly opposed any attempt to bring in brokers, asserting that any such evaluation would have a detrimental effect on his business and, in turn, his ability to provide support to plaintiff. Defendant alleged that the stability of the dealership would be compromised by speculation of a sale as a result of the divorce, and personnel would leave the employment of the dealership if a broker evaluation occurred. In view of defendant's intimate personal knowledge and representations regarding the intricacies of the nature of his business, *Groening, supra,* defendant cannot assert that his statements regarding value were mere opinions that are not actionable for fraud.

Defendant also contends that any reliance on defendant's representations about the value of the dealership by plaintiff and her counsel was unreasonable because plaintiff's counsel testified that she knew that the dealership was worth more than defendant was representing. Moreover, defendant asserts that detrimental

reliance did not occur because plaintiff agreed to accept the valuation of the mediator, who valued the property at $1.7 million. We disagree with defendant's contentions. Again, the elements of fraud are to be evaluated in light of all facts and circumstances, and direct proof of intent is not required. *Detroit Trust, supra; McDonald, supra.* Rather, actions and inferences arising from the acts may be considered. *Detroit Trust, supra.*

In support of his position, defendant directs this Court to examine plaintiff's acceptance of the valuation by the mediator. However, after review of all the facts and circumstances in context, there is no basis to disturb the jury verdict. Plaintiff retained an expert who valued the property at $4.0 to $4.9 million. However, it was acknowledged that the most accurate method of determining valuation was what the dealership price would be when placed on the open market. Additionally, a broker evaluation was determined to be an effective manner of determining accurate valuation. These methods were not employed because defendant was adamant that he did not intend on selling the dealership, but would operate it for at least eleven years.[1] Moreover, when plaintiff agreed to allow the

---

[1] We do not engage in independent fact-finding, but view the facts in the light most favorable to the nonmoving party. *Wiley, supra.* Moreover, the acceptance of these facts is consistent with the jury verdict. Indeed, defendant provided a basis for the jury to conclude that plaintiff's version of events and witnesses were credible. While defendant could recite his opinion regarding the limited monetary benefits he derived from the sale of the dealership and recounted efforts he made to salvage his dealership before resorting to a sale, he could not recall his salary ($750,000), and there was no indication that he reduced his income to save the dealership. Curiously, defendant utilized an appraiser in the divorce action to determine that the dealership was worth between $500,000 and $1.1 million. However, defendant consulted with his dealership accountant to arrive at the purchase price in excess of $6 million and did not utilize the appraiser's opinion for purposes of sale.

mediator to resolve the fair market value of the dealership, plaintiff was unaware of the presentation of fraudulent information to the mediator for resolution. Upon learning of the *potential* sale of the dealership through her son, plaintiff opposed the settlement agreement. However, the trial court ordered the plaintiff to enter into the settlement agreement upon receiving testimony from defendant that he did not intend to sell the dealership and would operate it for at least eleven years to comport with the settlement agreement.[2]

There was also testimony by plaintiff's counsel, Harriet Rotter, that had she known that defendant was going to sell the dealership within such a short time after entry of the divorce judgment, she would have tied the amount plaintiff was to receive in the property settlement to the actual sale price of the dealership, and that she did not do so because she believed defendant's representations. Similarly, plaintiff testified that she would not have been willing to reach the same agreement had she known that defendant planned to sell the dealership as soon as the divorce was final. Rotter and plaintiff both testified that the entire settlement agreement was structured around defendant's professed intent to keep the dealership. This testimony was sufficient, if believed, to allow the jury to conclude that defendant's misrepresentations about his intention to keep the dealership defrauded plaintiff of an appropriate share of the proceeds of the sale. Testimony indicated that the sale of the dealership resulted in a payment to defendant of in excess of $3 million after dealership debts and liabilities were discharged. We

---

[2] The settlement agreement provided that defendant would make payments of $50,000 a year for eleven years. Plaintiff's trial counsel testified that the settlement agreement did not include an acceleration clause to govern the event of sale of the dealership because of defendant's representations that a sale would not occur.

conclude that there was sufficient evidence presented to support the jury's conclusion that plaintiff was defrauded of $1 million relating to the value of the dealership, as a result of defendant's misrepresentations about his intent to sell the dealership and the effect of those statements on the treatment of the value of the dealership in the property settlement and the adoption of value by the mediator.

Regarding statements relating to his intent to continue operating the dealership until retirement, defendant further asserts that such statements, being statements of future intent, are not actionable. We disagree. "A fraudulent misrepresentation may be based on a promise made in bad faith, without [the] intention of performance." *Hi-Way, supra* at 337-338. Thus, a claim of fraud lies "where although no proof of the promisor's intent exists, the facts of the case compel the inference that the promise was but a device to perpetrate a fraud." *Id.* at 339. In any event, future statements support an action for fraud where the representations of fact are intended to be relied upon and accepted, and where the matter was within the particular knowledge of the speaker. *Crook, supra.* We conclude that plaintiff presented sufficient testimony that, if believed, allowed the jury to infer from defendant's conduct and the circumstances of the sale of the dealership that, while denying outwardly any intention to do so, defendant intended all along to sell the dealership and that he represented otherwise with an intent to gain financial advantage over plaintiff in the divorce proceedings. The jury was aware that defendant made a statement to his son during the divorce proceedings that he was going to sell the dealership, that he continued to take large sums of money out of the dealership despite its difficult financial situation, that he began discussions to sell the dealership less than three weeks after the divorce

judgment was entered, and that he reached an agreement to sell the dealership within a short time thereafter. While defendant testified that the statement to his son was a test to see how quickly word of it would travel to plaintiff and her counsel, the jury was free to disregard this explanation. *Vanguard, supra*. Plaintiff and her counsel testified that they relied on defendant's representations that he had no intention of selling the dealership in agreeing to the eleven-year payment plan provided in the settlement agreement, and that had they known that defendant was going to sell the dealership, they would have insisted that the balance owing to plaintiff be paid from the proceeds. This testimony was sufficient to support the jury's award in this regard.

Next, with regard to the Indian River property, there was ample testimony that defendant, through his counsel, repeatedly represented to plaintiff that he wanted to keep the Indian River property and that he could not bear to part with it. Given that he listed the property for sale within a month of buying out plaintiff's interest in the property, the evidence presented supported an inference that defendant misrepresented his intentions concerning the property in order to induce plaintiff to sell her interest in it to him, and that he made these misrepresentations for his own financial gain. Thus, we also conclude that there was sufficient testimony to support the jury's award on this claim.

Finally, defendant argues that he is entitled to a new trial because plaintiff's counsel appealed to the sympathy and passion of the jury during closing argument. While plaintiff's counsel did ask the jury to correct the inequities of the underlying divorce settlement, the jury was properly instructed on the elements of fraud, that it should base its verdict only on the evidence presented, about what constituted evidence, and that the state-

ments of counsel are not evidence. The trial court noted that the jurors were instructed to preserve the integrity of their decision-making. Instructing the jury that the statements of counsel are not evidence is generally sufficient to cure prejudice arising from counsel's improper remarks. *Tobin v Providence Hosp,* 244 Mich App 626, 641; 624 NW2d 548 (2001). Therefore, the trial court did not abuse its discretion in denying defendant's motion for a new trial.

Affirmed.