# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT HOLCOMB, as personal representative
of the Estate of ROBERTA HOLCOMB, deceased,

UNPUBLISHED
January 10, 2017

      Plaintiff-Appellant/Cross-Appellee,

v

      No. 328762
      Tuscola Circuit Court

JAMES NEUENSCHWANDER, M.D.,

      LC No. 12-027483-NH

      Defendant-Appellee/Cross-
      Appellant,

and

CARO COMMUNITY HOSPITAL,
EMERGENCY PHYSICIANS MEDICAL,
RICHARD HODGE, M.D., LEIGHTON LUM,
D.O., KELLAM & ASSOCIATES, P.C., and
VIRTUAL RADIOLOGIC,

      Defendants.

Before: BOONSTRA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

In this medical malpractice action, plaintiff's estate appeals as of right an order for "no cause of action" against defendant following a jury trial. Defendant cross-appeals from the same order, arguing that the matter should never have proceeded to trial and that the trial court erred in failing to grant defendant's earlier motion for summary disposition. Finding no errors warranting reversal, we affirm as to the primary appeal. Given this decision, there is no need to consider defendant's cross appeal.

## I. BASIC FACTS

On Wednesday, April 14, 2010, 68-year-old Roberta Holcomb (Roberta) underwent a laparoscopic cholecystectomy (gallbladder removal) with her surgeon, Dr. Lathrup. By 10:00 p.m. Friday evening, she developed pain in her side and went to Caro Community Hospital where she saw defendant. Defendant, an emergency room physician, had not performed Roberta's surgery. Absent Roberta's abdominal pain and recent surgery, defendant found no

-1-

other clinical evidence that Roberta suffered from a post-operative infection or bowel perforation. He discharged Roberta at 2:00 a.m. with instructions that she see her general surgeon at Covenant Hospital if the pain worsened. Roberta's pain returned once home, so she proceeded to Covenant as instructed at 5:00 a.m. on April 17th. There, she was seen by Lathrup's professional partner, Dr. Todd Richardson. Richardson, also noting the lack of clinical indications of a perforation, suggested a conservative course of treatment. Rather than immediately taking Roberta into surgery, Richardson suggested that Roberta, who was receiving intravenous antibiotics, remain under close observation. Eventually Roberta's symptoms worsened and Richardson performed exploratory surgery at 12:00 p.m. on April 17th. During the surgery, Richardson discovered and repaired a small perforation in Roberta's bowel. Roberta's recovery was complicated. She spent a number of days in the intensive care unit and was ultimately discharged from Covenant on April 30th. Roberta died at home in her sleep at home five days later on May 5th. The May 6, 2010 autopsy indicates that "Roberta Holcomb died of congestive heart failure and peritonitis.[1] She had recent surgery for gallbladder with subsequent peritonitis and wound infection. There are no other diseases contributing to her death. The manner of death is natural."

Plaintiff sued a number of individuals and institutions.[2] For purposes of this appeal, the only party that matters is defendant. It was plaintiff's theory that defendant was negligent in discharging Roberta from Caro, given her symptoms and recent surgery. Plaintiff contended that, at a minimum, defendant should have called Roberta's surgeon and discussed her condition. Plaintiff also believed that defendant should have transferred Roberta to Covenant hospital for further treatment and observation since Caro did not have a surgeon on staff at the emergency room. Plaintiff further maintained that defendant was negligent in failing to immediately administer prophylactic antibiotics and that this delay in administering antibiotics resulted in post-surgical complications that could have been avoided.

Defendant moved for summary disposition, arguing that his actions were not the cause of Roberta's injuries. Defendant noted that plaintiff did not take issue with Richardson's "wait and see" approach at Covenant, but then blamed defendant for failing to refer Roberta to a surgeon sooner. Defendant argued that if Richardson's conservative approach was acceptable, it follows that defendant's actions were unlikely to have changed the result. Plaintiff responded that defendant dismissed a constellation of Roberta's symptoms for a perforation, including Roberta's significant pain, pus around the wound, and the presence of "free air" on x-rays. Plaintiff argued that "but for" defendant's negligence, Roberta would have been seen and attended to at a time when she would have been able to recover. While the trial court granted summary disposition on a number of small issues, it found that there was a genuine issue of material fact whether defendant breached the standard of care by failing to immediately contact Roberta's surgeon,

---

[1] Peritonitis is the inflammation of the peritoneum – the tissue that lines the inner abdominal wall – due to bacterial or fungal infection.

[2] Those sued included both hospitals as well as the two radiologists that read her Caro CAT scans. Dr. Hodge provided the initial radiology report and worked off-sight. Dr. Lum, who worked at Caro, provided the later, more comprehensive report.

discharging Roberta rather than transferring her to Covenant, failing to administer antibiotics, and failing to properly make a differential diagnosis of a bowel perforation.

The matter proceeded to trial where each side presented numerous experts who offered opinions on the standard of care of an emergency room physician, as well as a history of Roberta's particular condition and treatment. After less than two hours of deliberation, the jury found that defendant was professionally negligent in one or more ways claimed by plaintiff, but that Roberta was not injured as a result of defendant's negligence. The trial court entered a "no cause of action" order.

Thereafter, plaintiff filed a motion for judgment notwithstanding the verdict (JNOV) and new trial, arguing that the jury's verdict was not only inconsistent and illogical but against the great weight of the evidence. Plaintiff alleged that defendant's actions resulted in the delay in diagnosing Roberta, which caused the sepsis. Plaintiff pointed to the undisputed autopsy report, which indicated that Roberta died due to the effect that being septic had on her heart. The trial court denied plaintiff's motion and it now appeals as of right, citing the same reasons for reversal as in the motion for new trial.

## II. STANDARD OF REVIEW

Pursuant to MCR 2.611(A)(1)(a) and (e), a new trial may be granted based on an "irregularity in the proceeding" or if the verdict was "against the great weight of the evidence or contrary to law." A trial court's decision on a motion for new trial is reviewed for an abuse of discretion. *Zaremba Equip, Inc v Harco Nat Ins Co*, 302 Mich App 7, 21; 837 NW2d 686 (2013). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Id.*

> This Court may overturn a jury verdict that is against the great weight of the evidence. But a jury's verdict should not be set aside if there is competent evidence to support it. Determining whether a verdict is against the great weight of the evidence requires review of the whole body of proofs. The issue usually involves matters of credibility or circumstantial evidence, but if there is conflicting evidence, the question of credibility ordinarily should be left for the fact-finder. Similarly, the weight to be given to expert testimony is for the jury to decide. [*Dawe v Bar-Levav & Assoc (On Remand)*, 289 Mich App 380, 401; 808 NW2d 240 (2010) (footnotes omitted).]

"A motion to set aside or otherwise nullify a verdict or a motion for a new trial is deemed to include a motion for judgment notwithstanding the verdict as an alternative." MCR 2.610(A)(3). "We review de novo a trial court's ruling on a motion for JNOV." *Zaremba*, 302 Mich App at 15. In reviewing a motion for JNOV, an appellate court reviews the evidence and all legitimate inferences in a light most favorable to the nonmoving party. *Sniecinski v Blue Cross & Blue Shield of Michigan*, 469 Mich 124, 131; 666 NW2d 186 (2003). "A motion for directed verdict or JNOV should be granted only if the evidence viewed in this light fails to establish a claim as a matter of law." *Id.* "When the evidence presented could lead reasonable jurors to disagree, the trial court may not substitute its judgment for that of the jury." *Foreman v Foreman*, 266 Mich App 132, 136; 701 NW2d 167 (2005).

At the close of proofs, the trial court instructed the jury:

> Your verdict will be for the plaintiff if the defendant was negligent and such negligence was a proximate cause of the plaintiff's injuries and if there were damages.

> Your verdict will be for the defendant if the defendant was not professionally negligent or did not prac – excuse me. Did not commit malpractice or if the defendant was professionally negligent or did commit malpractice but such professional negligence or malpractice was not a proximate cause of the plaintiff's injuries or damages or if the plaintiff was not injured or damaged.

The verdict form provided:



**VERDICT FORM**

We, the jury, answer the following questions submitted as follows

QUESTION NO. 1   Was Defendant, Dr James Neuenschwander, M D professionally negligent in one or more ways claimed by plaintiff?

ANSWER Yes (Yes or no)

    If your answer is yes, go on Question No 2
    If your answer is no, do not answer any further questions

QUESTION NO. 2   Was Plaintiff's decedent Roberta Holcomb injured in one or more ways claimed by Plaintiff?

ANSWER No (yes or no)

    If your answer is yes, go on Question No 3
    If your answer is no, do not answer any further questions

QUESTION NO. 3   Was the professional negligence of Defendant, James Neuenschwander, M D , a proximate cause of the injury or damages to Plaintiff?

ANSWER _____ (yes or no)

Plaintiff argues that, having answered Question #1 in the affirmative, "there was no reasonable evidentiary basis that would account for the jury's answer to question number two (2)." In so doing, plaintiff glosses over causation.

> In order to establish a cause of action for medical malpractice, a plaintiff must establish four elements: (1) the appropriate standard of care governing the

---

[3] Plaintiff's 12-page appellate brief does not accurately reflect the extent and complexity of the 6-day trial. It is woefully lacking in facts and analysis. In addition, plaintiff has failed to supply the transcripts related to the motion for new trial. We will nevertheless attempt to address plaintiff's arguments.

defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care. [*Craig v Oakwoood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004).]

Proximate cause involves both the "cause in fact" and the "legal cause." *Skinner v Square D Co*, 445 Mich 153, 162-63; 516 NW2d 475 (1994). The first requires a showing that "but for" defendants' action, Roberta would not have been injured whereas the latter focuses on foreseeability and whether a defendant should be held legally responsible for such consequences. *Id.* "A plaintiff must adequately establish cause in fact in order for legal cause or 'proximate cause' to become a relevant issue." *Id.*

At trial, plaintiff alleged that defendant was negligent in a variety of ways: (1) failing to immediately call Roberta's surgeon; (2) failing to transfer Roberta directly to Covenant; (3) failing to administer antibiotics; and, (4) failing to make a proper differential diagnosis of bowel perforation; and, (5) discharging Roberta. In answering Question #2 in the negative, the jury clearly determined that Roberta's injury was not the result of defendant's malpractice "in one or more of the ways claimed by Plaintiff."

The jury's determination that defendant acted below the standard of care in one or more ways plaintiff alleged did not compel a finding that Roberta's injury was the result of defendant's negligence. This is especially true in light of Richardson's testimony that he would not have done anything differently had Roberta presented to Covenant sooner. Her symptoms when she arrived at Covenant did not cause Richardson to believe that Roberta was suffering from a bowel perforation. Roberta was not feverish and had normal vital signs. There was no evidence of rebounding or guarding. Like defendant, Richardson believed that the presence of free air in Roberta's x-rays was the result of her surgery two days prior. In fact, plaintiff's experts did not take issue with Richardson's "wait and see" approach. It was only after Roberta's condition worsened that Richardson took her into surgery. Under these circumstances, the jury was justified in determining that defendant's conduct was not the cause of Roberta's injuries. As in *Allard v State Farm Ins Co*, 271 Mich App 394, 407–408; 722 NW2d 268 (2006), while the parties and the trial court "both believed that Question No. 3 was the proper causation question, the trial court correctly determined that the jury found a lack of causation in Question No. 2." There was nothing inconsistent about the jury's verdict.

To the extent plaintiff argues that the jury simply got it wrong and should have rendered a verdict for plaintiff, there was ample competent evidence to support the jury's verdict. Although plaintiffs' experts testified that Roberta's outcome would have been different had defendant administered antibiotics sooner, defendant's experts disagreed. "The weight given to the testimony of experts is for the jury to decide, and it is the province of the jury to decide which expert to believe." *Guerrero v Smith*, 280 Mich App 647, 669; 761 NW2d 723 (2008) (quotation marks omitted).

Plaintiff goes on to argue that the trial court erred in permitting defendant to raise alternative theories of cause of death, in contravention of MRE 803(9) and MCL 326.16 regarding Roberta's cause of death.

Just as defendant was prepared to call his first witness on the fourth day of trial, plaintiff filed a motion in limine to prevent defendant's experts from offering an opinion on Roberta's cause of death. Plaintiff's counsel argued that Roberta's death certificate was prima facie evidence of the facts contained therein. Defense counsel and the trial court noted that while the death certificate may have been the best evidence, it did not preclude defendant from presenting competing evidence as to Roberta's cause of death. In denying plaintiff's motion, the trial court noted that the issue was not one of admissibility but of weight. At trial, defendant's general surgery expert, James McQuiston, took issue with the pathologist's report regarding the cause of Roberta's death:

> [I]n looking at the pathologist's report, the pathologist used a clinical diagnosis she died of complications related to the bowel perforation from the gallbladder. But in terms of the actual cause of why she passed way, I – no, and I don't think we'll ever know, I mean.

> ***

> It's a clinical diagnosis that was given, not a pathologic, which means that – that it's based on the fact that we – we – the pathologist didn't in my opinion make a determination of what the actual cause of her death was. I mean she didn't – didn't say that . . .there was overwhelming sepsis, didn't say that she had a heart attack, didn't say that she had a stroke. Just kind of a very – I hate to say it – generic that it happened because of this. But we don't know. I mean she was discharged on the – on the 30th with the expectation that she was gonna get better and five days later she died.

MRE 803(9) provides that "Records or data compilations, in any form, of births, fetal deaths, deaths, or marriages, if the report thereof was made to a public office pursuant to requirements of law" is not excluded under the hearsay rule. MCL 326.16 has been repealed, but its replacement – MCL 333.2886 – provides:

> A certified copy of a vital record, or any part thereof, or a certificate of registration issued in accordance with sections 2881 and 28821 is considered for all purposes the same as the original and is prima facie evidence of the facts[4] stated in the original.

---

[4] Although cause of death is generally considered an "opinion" as opposed to a "fact," this Court has interpreted cause of death to be the type of "fact" referred to in the statute. "If we were to require that a statement in a death certificate be a "fact" in the sense of an absolute objective reality, virtually nothing in a death certificate would be admissible." *Greek v Bassett*, 112 Mich App 556, 562; 316 NW2d 489 (1982).

Defendant was permitted to rebut the presumption that the death certificate contained a presumption regarding Roberta's death. "[T]he facts contained in a death certificate are merely *prima facie* evidence that may be rebutted by contrary evidence." *Kowalski v Iron Workers Local No 25 Pension Fund*, No. 07-11014, 2008 WL 375208, at *3 (ED Mich February 12, 2008). "Prima facie evidence is evidence which, *if not rebutted*, is sufficient by itself to establish the truth of a legal conclusion asserted by a party." *American Cas Co v Costello*, 174 Mich App 1, 7; 435 NW2d 760 (1989). Thus, while the certified cause of death was presumptively correct, it was only prima facie evidence and could be rebutted.

Affirmed. Defendant may tax costs, having prevailed in full. MCR 7.219.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly