*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARIAN OLIVER,

        Plaintiff-Appellant,

v

ESURANCE INSURANCE COMPANY and
ESURANCE PROPERTY AND CASUALTY
INSURANCE COMPANY,

        Defendants-Appellees.

UNPUBLISHED
August 11, 2022

No. 355699
Wayne Circuit Court
LC No. 19-001917-NF

MARIAN OLIVER,

        Plaintiff-Appellee,

v

ESURANCE INSURANCE COMPANY and
ESURANCE PROPERTY AND CASUALTY
INSURANCE COMPANY,

        Defendants-Appellants.

No. 356886
Wayne Circuit Court
LC No. 19-001917-NF

Before: SAWYER, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

After an automobile accident in 2018, plaintiff sued defendants,[1] insurer of the vehicle she occupied, for no-fault personal protection insurance ("PIP") benefits following defendants' denial

---

[1] Plaintiff named both Esurance Insurance Company and Esurance Property and Casualty Insurance Company as defendants. There was no attempt to distinguish these apparently related parties in the lower court proceedings.

of her claim. The trial court granted defendants' motion for summary disposition under MCR 2.116(C)(10), holding that an antifraud provision in defendants' insurance policy barred plaintiff's claim. Defendants thereafter moved for costs and attorney fees under MCR 2.625, MCL 500.3148, and MCL 600.2591, but the trial court denied defendants' motion. In Docket No. 355699, plaintiff appeals as of right the trial court's order granting defendants summary disposition. In Docket No. 356886, defendants appeal as of right the trial court's order denying their motion for costs and attorney fees. We reverse in Docket No. 355699, affirm in Docket No. 356886, and remand for further proceedings.

## I. FACTUAL BACKGROUND

On March 8, 2018, plaintiff rode as a passenger in a vehicle driven by her brother-in-law, Bernard Thompson, whose vehicle became involved in a chain-reaction rear-end collision. She used her phone on Facebook Live at the time and recorded the events shortly after the accident. Thompson's vehicle had minimal damage. Plaintiff exited the vehicle on her own.

The day of the accident, plaintiff planned to drive to Georgia with other family members to attend a family party. She proceeded with those plans after the accident, but stated that other relatives did the driving and she had to limit her activity in Georgia because of the pain and discomfort she experienced. When plaintiff returned to Michigan approximately a week later, she sought treatment for a variety of symptoms that she attributed to the March 2018 accident. She primarily complained of headaches, pain and tingling in her arms, and pain in her neck and back. Her doctor diagnosed herniated discs in her cervical spine or neck, and radiculopathy in the lumbar spine. She underwent a cervical fusion for disc herniations.

Approximately six years earlier, in 2012, plaintiff suffered a work-related injury when she slipped and fell, injuring her left arm. Her doctor diagnosed a pinched nerve on her left side. She had a second work-related injury in 2013 that included an injury to her neck or cervical spine. She received worker's compensation benefits and also was awarded Social Security disability benefits for her injuries.

Defendants contended that plaintiff's injuries were not related to the March 2018 accident, but were preexisting injuries that predated the accident. Defendants filed two motions for summary disposition. After the trial court denied defendants' first motion, defendants alleged in their second motion that plaintiff violated an antifraud provision in defendants' insurance policy which barred her from recovering no-fault benefits. In support of their fraud claim, defendants relied on the Facebook Live video recording made by plaintiff just after the accident during which she made statements that she should claim an accident injury, despite showing no overt signs of pain or discomfort immediately following the accident. Defendants also argued that plaintiff made false statements regarding her medical history during a presuit examination under oath and in her deposition after she filed suit, and to physicians who treated her after the accident, wherein she generally denied a history of prior neck or back injuries, and denied having previously received physical therapy and diagnostic testing for her neck.

The trial court found that plaintiff misrepresented her medical history and that the false statements triggered the antifraud provision in defendants' insurance policy, permitting defendants to deny coverage for all PIP benefits to plaintiff. The trial court granted defendants' motion under

MCR 2.116(C)(10) and dismissed plaintiff's action. Defendants thereafter moved for costs and attorney fees, but the trial court denied their motion. These appeals followed.

## II. ANALYSIS

### A. DOCKET NO. 355699: SUMMARY DISPOSITION BASED ON FRAUD

Plaintiff argues that the trial court erred by granting defendants summary disposition under the antifraud provision in defendants' insurance policy. We agree.

We review de novo a trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). The trial court granted defendants' motion under MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) tests the factual support for a claim. A court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties, and view that evidence in the light most favorable to the nonmoving party to determine if a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden v Rozwood,* 461 Mich 109, 118-120; 597 NW2d 817 (1999). Summary disposition should be granted "where the proffered evidence fails to establish a genuine issue regarding any material fact," and the moving party is entitled to judgment as a matter of law. *Id*. at 120. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423; 864 NW2d 609 (2014) (quotation marks and citation omitted).

In their second motion for summary disposition, defendants argued that they were entitled to summary disposition because plaintiff made false statements in violation of an antifraud provision in the policy, barring all coverage for PIP benefits. The antifraud provision provided for voiding of the policy if fraud or misrepresentations were made in the application but also stated in pertinent part:

> "We" do not provide coverage or benefits for any person who has made fraudulent statements or engaged in fraudulent conduct in connection with any "accident" or "loss" for which coverage or benefits are sought under this policy.

In support of their motion, defendants relied on *Bahri* in which this Court held that a general fraud exclusion in an insured's policy applied to bar a claim for replacement services.

Plaintiff argues that more recent decisions from our Supreme Court and this Court now clarify that defendants were not entitled to rely on the antifraud provision in their policy to deny statutorily mandated no-fault coverage under the circumstances of this case. We agree.

It is undisputed that plaintiff was not the policyholder and that her claim for no-fault benefits arose under the no-fault act, which entitled plaintiff to seek benefits from the insurer of the vehicle involved in the accident. In *Shelton v Auto-Owners Ins Co*, 318 Mich App 648; 899 NW2d 744 (2017), this Court distinguished *Bahri* on facts similar to those in this case. The plaintiff, a passenger involved in a motor vehicle accident, did not have no-fault coverage in her own name or reside with a relative who had coverage. She sought no-fault benefits from the insurer of the vehicle's driver. *Id.* at 651. The defendant insurer contended that the policy's exclusionary clause barred coverage when a person seeking benefits made fraudulent statements or engaged in

fraudulent conduct respecting either procuring the policy or any occurrence for which a claimant sought coverage. *Id*. at 651-652. The defendant asserted that the plaintiff made fraudulent statements concerning her need for replacement services, and therefore, the policy's exclusionary fraud clause applied to bar coverage for all no-fault benefits. *Id*. at 650.

This Court held that *Bahri* did not apply because the plaintiff in *Shelton* sought no-fault benefits mandated by statute, not pursuant to any contractual agreement with the defendant. Because the claim for no-fault benefits depended solely on the no-fault act and not the insurance policy, the exclusionary clause in the policy did not apply to bar the plaintiff's claim. *Id*. at 652-655. This Court remarked that the defendant could deny a fraudulent claim and should the claimant file suit the claimant would have to prove entitlement to benefits. *Id*. at 655.

After this Court decided *Shelton*, our Supreme Court clarified in *Meemic Ins Co v Fortson*, 506 Mich 287, 293, 297-298; 954 NW2d 115 (2020), that coverage for statutory PIP benefits is governed by the terms of the no-fault act, whereas the insurance policy contract controls coverages that are not governed by the no-fault act. Addressing the applicability of a contractual fraud defense to a claim for coverage mandated by the no-fault act, the Court held that "a provision in an insurance policy purporting to set forth defenses to mandatory coverage is only valid and enforceable to the extent it contains statutory defenses or common-law defenses that have not been abrogated" by the no-fault act. *Id.* at 302-303.

Our Supreme Court first observed that "[t]he no-fault act . . . does not provide a fraud defense to PIP coverage," and therefore, "Meemic's antifraud defense is not statutory." *Id.* at 303-304. Therefore, the Court considered whether Meemic's contract-based fraud defense was a common-law defense that had not been abrogated by the act. In this regard, the Court held that Michigan law allows a party to rescind a contract because of preprocurement fraud, consisting of fraud "related to the inducement to or inception of the contract," or postprocurement fraud involving a party's failure to perform a substantial part of the contract or one of its essential terms. *Id*. at 304-307.

More recently, in *Williams v Farm Bureau Mut Ins Co of Mich*, 335 Mich App 574, 586-587; 967 NW2d 869 (2021), this Court stated:

> *Meemic* held that antifraud provisions in no-fault policies apply to fraud in the inducement but not to allegations of postprocurement fraud. Accordingly, the policy provision on which defendant and the trial court relied is "invalid and unenforceable" to the degree a no-fault insurer seeks to apply it to allegations of postprocurement fraud in a claim under mandatory coverage, as in this case. *Meemic*, 506 Mich at 316. The order of summary disposition is reversed and the case is remanded for proceedings consistent with this opinion.

There is no dispute in this case that defendants have alleged only postprocurement fraud. They do not rely on anything relating to the procurement or inception of the policy to avoid paying benefits. Indeed, plaintiff is not a party to the contract and did not procure the policy. Accordingly, under *Meemic* and *Williams*, defendants cannot rely on the policy's antifraud provision to defeat plaintiff's claim for mandatory PIP benefits. The trial court, therefore, erred by granting defendants' motion for summary disposition.

That is not to say that defendants cannot reject fraudulent claims. However, whether a specific claim is fraudulent is an issue distinct from an antifraud provision. A claimant must still establish that any PIP benefits are actually payable. See MCL 500.3107. A claimant would not be entitled to recover benefits for any fraudulent claims, but the claimant is not precluded from recovering other no-fault benefits to which the claimant can prove entitlement. In this case, the trial court did not examine plaintiff's entitlement to any specific claims, but instead granted defendants summary disposition based on the antifraud provision that, under *Meemic* and *Williams*, is invalid and unenforceable as applied to plaintiff's claims for mandatory PIP benefits. Therefore, reversal is required.

Plaintiff also argues that the trial court erred by relying on her allegedly false statements made during discovery to establish factual support for defendants' claim of fraud. Plaintiff argues that this was impermissible under *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719; 957 NW2d 858 (2020), which this Court decided approximately a week after the trial court entered its order granting defendants' motion for summary disposition. We agree.

In *Haydaw*, like the instant case, the defendant insurer moved for summary disposition pursuant to *Bahri*, and the trial court granted the defendant summary disposition by applying the antifraud provision in the insurance policy. *Haydaw*, 332 Mich App at 722-723. On appeal, this Court addressed whether statements made during the course of litigation could be used to void an insurance policy under a fraud provision. This Court held that statements made during the course of litigation cannot be used to void a policy under its antifraud provision. *Id.* at 723-730. As explained in *Fashho v Liberty Mut Ins Co*, 333 Mich App 612, 619; 963 NW2d 695 (2020), *Haydaw* stands "for the unremarkable proposition that an insurer cannot assert that it denied a claim because of fraud that occurred after litigation began; the fraud must have occurred before the commencement of legal proceedings."

Defendants' motion for summary disposition relied heavily on allegedly false statements made by plaintiff in her deposition, after this litigation commenced. The record indicates that the trial court relied on those postlitigation statements to conclude that no genuine issue of material fact existed that they implicated the antifraud provision in defendants' policy. Under *Haydaw*, those statements could not be used to implicate the antifraud provision in defendants' policy.

Defendants argue that plaintiff also made false statements in an examination under oath before she commenced this action, and it also relied on statements made by plaintiff in the video recording that she made on the day of the accident. Defendants argue that because these statements preceded the commencement of this litigation, they are not implicated by *Haydaw*. The trial court, however, expressly found that plaintiff's statements in the video recording did not support defendants' claim of fraud, and the court did not distinguish between plaintiff's statements made under oath before this litigation was commenced and her postlitigation statements. In any event, as explained previously, such statements involve postprocurement fraud that cannot be used to implicate the antifraud provision in defendants' policy, which the trial court relied upon for its order granting summary disposition for defendants. Therefore, reversal is required.

We note that, on appeal, defendants now argue that they are entitled to summary disposition, not because of fraud and application of the antifraud provision of the insurance policy, but because plaintiff cannot prove her entitlement to benefits under the no-fault act. They contend

that she cannot establish that her injuries are actually related to the March 2018 accident. It is defendants' theory that plaintiff suffered from chronic conditions that preexisted the March 2018 accident. Defendants did not make this argument in the trial court, nor did the trial court render its summary disposition decision on that ground. Rather, defendants relied on the antifraud provision to bar coverage for all claims, and the trial court also determined that the provision barred coverage for all claims without examining how any allegedly false statements related to any specific claims for statutory benefits. The record reflects that plaintiff testified at her deposition that, after the March 2018 accident, she experienced neck pain, back pain, and recurrent headaches that she did not experience before the accident. She presented medical evidence documenting her postaccident treatment for these conditions. Such evidence sufficed to create a genuine issue of material fact whether plaintiff's injuries were linked to the March 2018 accident. Although defendants question plaintiff's motive and credibility, summary disposition is not appropriate where motive and intent are at issue, or where the credibility of a witness is critical. *Foreman v Foreman*, 266 Mich App 132, 135-136; 701 NW2d 167 (2005). Accordingly, defendants are not entitled to summary disposition on this new theory.

## B. DEFENDANTS' AFFIRMATIVE DEFENSES

Plaintiff also argues that the trial court erred by granting defendants summary disposition because they failed to plead with particularity fraud as an affirmative defense. In *Glasker-Davis v Auvenshine*, 333 Mich App 222, 232; 964 NW2d 809 (2020), this Court clarified that "the affirmative defense of fraud, see MCR 2.111(F)(3)(a), is a notable exception to the general notice-pleading requirements and requires significantly more detailed and stringent allegations." Thus, it is insufficient to merely allege that a plaintiff's conduct was fraudulent. *Id.* at 232-233.

We agree that defendants failed to plead fraud with the requisite particularity. As already discussed, however, reversal is required for other reasons, independent of defendants' failure to plead fraud with particularity. But because leave to amend should be freely given when justice so requires, MCR 2.118(A)(2), and considering that *Glasker-Davis* was decided after the trial court granted defendants' motion for summary disposition, and that plaintiff had notice of defendant's specific allegations of fraud from defendant's first motion for summary disposition, defendants should be permitted on remand to file an appropriate motion to amend their affirmative defenses if they wish to still pursue fraud as an affirmative defense insofar as such defense may prove applicable. See generally *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997).

## C. DOCKET NO. 356886

In Docket No. 356886, defendants argue that the trial court erred by denying their motion for costs and attorney fees. Defendants moved for costs and attorney fees under MCR 2.625(A) (authorizing taxable costs), MCL 600.2591 (authorizing attorney fees where an action is frivolous), and MCL 500.3148 (authorizing attorney fees where a no-fault claim is in some respect fraudulent). However, defendants must be prevailing parties to be entitled to sanctions under these provisions. See *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 534-535; 773 NW2d 57 (2009). Because we reverse the trial court's order granting defendants summary disposition, defendants are no longer prevailing parties, and therefore, are not entitled to costs or attorney fees. Accordingly, we affirm the trial court's order denying defendants' motion for costs and attorney fees.

## III. CONCLUSION

In Docket No. 355699, we reverse the trial court's order granting defendants summary disposition and remand for further proceedings. In Docket No. 356886, we affirm the trial court's order denying defendants' motion for costs and attorney fees. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Douglas B. Shapiro
/s/ James Robert Redford