*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELLE HEYZA and LEONARD HEYZA,

        Plaintiffs/Counterdefendants-
        Appellants,

v

MCMACHEN BOATING CENTER LLC,

        Defendant/Counterplaintiff/Cross-
        Defendant/Cross-Plaintiff-Appellee,

and

MICHIGAN FIRST CREDIT UNION,

        Defendant,

and

MARIE MERRELLI and ROBERT MERRELLI,

        Defendants/Cross-Defendants/Cross-
        Plaintiffs.

UNPUBLISHED
August 11, 2022

No. 357255
Macomb Circuit Court
LC No. 19-001739-NZ

Before: RIORDAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

       In this dispute arising from their purchase of a boat, plaintiffs/counterdefendants, Michelle Heyza and Leonard Heyza (individually "Michelle" and "Leonard," collectively "plaintiffs"), appeal as of right the trial court's judgment in favor of defendant/counterplaintiff, McMachen Boating Center, LLC (MBC). We reverse and remand for proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of the sale of a boat, a 2001 Cruisers 3076 Express, by MBC to plaintiffs. The boat was owned by Marie Merrelli and Robert Merrelli[1], and MBC acted as broker in the transaction. Plaintiffs signed a purchase agreement indicating the "sale [was] contingent upon an acceptable sea trial," and they paid a $500 deposit. The purchase agreement also contained an "as is" clause and warranty disclaimer that stated:

> NO VERBAL COMMITMENTS WILL BE HONORED. SELLER MAKES NO WARRANTIES OF ANY KIND EXPRESS OR IMPLIED. Purchaser understands that Seller's sole responsibility with regard to any boat, motor, or accessory sold herein is to issue buyer the manufacturer's warranty, if any, Purchaser agrees to look for recourse solely to the manufacturer in the event of defect in any such boat, motor, or accessories. Purchaser understands that all goods sold herein are being sold by Seller "as is." SELLER EXPRESSLY DISCLAIMS ALL WARRANTIES, INCLUDING THE IMPLIED WARRANTIES FOR FITNESS FOR A PARTICULAR PURPOSE AND OF MERCHANTABILITY. Seller disclaims the representation of any agents, employees or representatives, whether verbal or in writing, and Purchaser acknowledges that he has not relied upon any such representation in making this purchase other than the terms specifically set forth under this Agreement for Sale. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF.

Plaintiffs chose not to obtain a marine survey or inspection, which would have confirmed the boat's seaworthiness, purportedly at the suggestion of an MBC salesperson, who gave plaintiffs the impression it would be expensive and unnecessary.[2] After a successful sea trial—a test ride on the boat accompanied by T.J., the salesperson—plaintiffs decided to purchase the boat. Michelle handled the financing paperwork with an MBC employee while Leonard was at work. Michelle testified the employee was aware plaintiffs could not pay more than $500 for a down payment. Plaintiffs testified the employee had Michelle write a check for $10,570. Michelle wrote on the memo line of the check: "Down Payment on Boat." Plaintiffs understood that was the check was being used to verify funds in plaintiffs' bank account. After Michelle gave the employee the

---

[1] The Merrellis were the prior owners of the boat. MBC filed a Notice of Nonparty at Fault identifying them and filed a counter cross-complaint for common law indemnity and implied contractual liability. All claims raised against the Merrellis were dismissed by stipulated orders, and they are not parties to this appeal.

[2] Leonard testified that the salesperson, "T.J.," indicated that a marine survey was unnecessary because the boat was "still floating," and "still driving," and a marine surveyor was only an additional person trying to "get their hands in getting money." T.J. also allegedly represented that there were other offers on the boat, he did not know how long the boat would be available, and a marine survey would cost between $1,200 and $1,600. According to Leonard, plaintiffs could not afford the high cost of the survey at that time.

check, the employee "went in the back and did something," then returned the check to Michelle uncashed.

Plaintiffs averred that they did not intend to use the $10,570 check as the down payment for the boat. Nevertheless, plaintiffs signed a subsequent purchase agreement[3] and a financing contract indicating plaintiffs paid $10,570 as down payment on the $49,290 boat. The financing contract reflected the total financed amount was $38,895 after the down payment. Plaintiffs were responsible for 240 payments of $301.32, due monthly beginning on March 14, 2017, at 6.99% annual interest. The financing contract was assigned to Michigan First Credit Union (MFCU),[4] per an existing agreement between MFCU and MBC. Plaintiffs did not dispute the documents they signed incorrectly indicated a down payment of $10,570, but maintained that MBC wrongly made it appear plaintiffs paid that amount to obtain the necessary financing. MBC claimed plaintiffs knowingly and fraudulently signed the contract, including the misrepresentation of the down payment amount, to finance the boat at the lower price.

Plaintiffs operated the boat on the water without any issues during the summer of 2017, and stored it at their personal dock when not in use. In October 2017, plaintiffs brought the boat to MBC to be stored over the winter. When plaintiffs retrieved the boat in May 2018, they discovered the boat was taking on water and needed to be removed from the canal. Plaintiffs initially brought the boat back to MBC to be stored, but later moved it to a different location.

Plaintiffs' insurance company, Farm Bureau, contracted with Davis & Company Limited (Davis), a marine surveyor and consultant, to determine the extent of the damage. A Davis representative determined the boat's hull was rotten and fiberglass bottom was cracked, allowing the boat to slowly take on water over the previous three or four years. After multiple experts inspected the boat, it was determined the boat was a total loss and no longer insurable, even if the costly repairs were completed.

In April 2019, MBC agreed to buy back the financing contract from MFCU and became first lien holder. A letter dated May 17, 2019, from MBC's counsel, sent to plaintiffs informed

---

[3] There are actually two purchase agreements submitted in the lower court record. On April 6, 2017, plaintiffs signed an invoice and purchase agreement (invoice number 2910) stating: "Sale is contingent upon an acceptable sea trial (April)." According to that invoice, the sale price of the boat was $37,000, $2,220 for tax, $175 for registration, and plaintiffs paid a $500 deposit, making the total financed amount $38,895. Also dated April 6, 2017, a second purchase agreement (invoice number 2780) lists the selling price as $46,500, plus $2,790 in tax, $175 for title and registration, and a down payment of $10,570; thus, the total financed cost equaled $38,895. Plaintiffs contend invoice no. 2910 was the controlling invoice, and during a trial court hearing, plaintiffs' counsel represented that Michigan First Credit Union was unhappy with the original price of the boat on invoice no. 2910, so MBC wrote up the subsequent invoice for the higher boat price. MBC does not offer any explanation for the two invoices.

[4] The claims by plaintiffs and MBC raised against MFCU were dismissed by stipulated orders. MFCU is not a party to this appeal.

them to make all future loan payments to MBC. Plaintiffs began withholding payments in April 2019.

Plaintiffs filed a complaint[5] in May 2019, against MBC[6] alleging various claims of breach of warranty, revocation of acceptance and damages, violation of Michigan Consumer Protection Act, MCL 445.901 *et seq.*, fraud in the inducement, negligence, and conspiracy. In August 2019, MBC filed a counterclaim against plaintiffs, alleging plaintiffs failed to make any payments on the contract since it was reassigned to MBC, resulting in the unpaid loan balance being accelerated and due in full. MBC requested $36,439.63 plus interest, court costs, and attorney fees.

MBC moved for summary disposition on its counterclaim, arguing it was entitled to judgment as a matter of law because the evidence was undisputed that plaintiffs failed to make payments on the financing contract after April 2019. In response, plaintiffs moved for leave to file a third amended complaint to add a claim that MBC violated the Retail Installment Sales Act (RISA), MCL 445.853 *et seq.*, when it included the incorrect down payment of $10,570 on the financing contract. Plaintiffs also answered they were entitled to summary disposition under MCR 2.116(I)(2), because RISA precludes MBC's enforcement of the contract against plaintiffs because MBC was, at least, complicit in the misrepresentation.

The trial court heard oral argument on the motions. During a hearing, it advised that it did not believe the testimony offered by plaintiffs and found their testimony to be "preposterous." The trial court indicated that it would refer the matter to the court's research division for a written opinion granting summary disposition in favor of MBC. However, the trial court also predicted that it could compose the opening paragraphs of the Court of Appeals' opinion reversing its decision. As promised, the trial court issued an opinion and order granting MBC's motion for summary disposition under MCR 2.116(C)(10), denying plaintiffs' motion to amend their complaint, and dismissing plaintiffs' complaint in its entirety. The trial court's decision rested on its finding plaintiffs knew of, and participated in, the misrepresentation of the down payment amount, and sua sponte concluded the unclean-hands doctrine barred the equitable relief of rescission that plaintiffs sought. Plaintiffs' motion for reconsideration of the trial court's opinion was also denied. This appeal followed.

## II. STANDARD OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."

---

[5] Plaintiffs twice amended their complaint, a first-amended complaint on August 22, 2019, and a second-amended complaint was filed in November 22, 2019, but is erroneously titled "First Amended Complaint." The claims here are from plaintiffs' November 22, 2019 amended complaint.

[6] Plaintiffs initially also included claims against MFCU and the Merrellis in their prior complaints, but claims against those parties were dismissed by stipulated order.

MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties in the light most favorable to the nonmoving party. MCR 2.116(G)(4), (G)(5); *Buhl v City of Oak Park*, 507 Mich 236, 242; 968 NW2d 348 (2021). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Additionally, under MCR 2.116(I)(2), a court may enter judgment in favor of the opposing party when "the opposing party, rather than the moving party, is entitled to judgment."

## III. UNCLEAN HANDS AND CREDIBILITY

Plaintiffs submit the trial court erroneously applied the unclean-hands doctrine solely to plaintiffs, despite the fact that MBC represented that plaintiffs made the $10,570 deposit to MFCU but returned the check to plaintiffs. Further, they allege that the trial court improperly assessed their credibility. We agree.

When ruling on a motion for summary disposition, the court does not engage in an assessment of the credibility of the witnesses. *White v Taylor Distrib Co*, 482 Mich 136, 142-143; 753 NW2d 591 (2008). "Summary disposition is suspect when motive and intent are at issue or where the credibility of a witness is crucial." *Foreman v Foreman*, 266 Mich App 132, 135-136; 701 NW2d 167 (2005). When the truth of a material fact assertion is premised on witness credibility, summary disposition should not be granted. *Id*. at 136. If presented with conflicting evidence, the court may not make factual findings, and summary disposition is improper. *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019). Rather, application of disputed facts to the law present proper questions for the jury or trier of fact. *White*, 482 Mich at 143.

Although neither party invoked the unclean-hands doctrine, the trial court determined plaintiffs' conduct constituted unclean hands, and therefore, found that plaintiffs were precluded from the equitable relief of rescission of the purchase agreement and financing contract. "Since the clean hands maxim is designed to preserve the integrity of the judiciary, courts may apply it on their own motion even though it has not been raised by the parties or the courts below." *Stachnik v Winkel*, 394 Mich 375, 382-383; 230 NW2d 529 (1975). "It is well settled that one who seeks equitable relief must do so with clean hands." *Atty Gen v PowerPick Players' Club of Mich*, LLC, 287 Mich App 13, 52; 783 NW2d 515 (2010). However, a defendant with unclean hands may not defend by asserting that a plaintiff also has unclean hands. *Id*. at 53. "To permit a defendant with unclean hands to defend on such a ground would contravene the ancient rule that '[h]e who hath committed iniquity shall not have equity . . . .' " *Id*. (citation omitted).

"When a plaintiffs' action is based, in whole or in part, on its own illegal conduct, a fundamental common-law maxim . . . known as the 'doctrine of in pari delicto' generally applies to also bar the plaintiff's claim." *Orzel v Scott Drug Co*, 449 Mich 550, 558; 537 NW2d 208 (1995). That is, when two parties are equally in the wrong, the law will not afford one party relief over the other, but will leave them as it finds them. *Id*. "The rationale that Michigan courts have used to support the wrongful-conduct rule are rooted in the public policy that courts should not lend their aid to a plaintiff who founded his cause of action on his own illegal conduct." *Id*. at 559.

"In determining whether the plaintiffs come before this Court with clean hands, the primary factor to be considered is whether the plaintiffs sought to mislead or deceive the other party not whether that party relied upon plaintiffs' misrepresentations." *Stachnik*, 394 Mich at 387. The trial court faulted plaintiffs for presenting a $10,570 deposit check when never intending on making such a deposit. The trial court's characterization and blame placed on plaintiffs while essentially forgiving MBC's actions are puzzling and contrary to the rules governing summary disposition and credibility determinations. Plaintiffs alleged that their presentation of such a deposit check and its return was at the behest of MBC's employee, and MBC failed to present evidence to the contrary.[7] Further, it is difficult to discern how plaintiffs would have volunteered such a course of action, but rather seemingly had to be apprised by MBC's employee on how to proceed. Moreover, when the degree of impropriety is examined, plaintiffs submitted a check to MBC. However, MBC purportedly submitted a copy of the check to the lending institution MFCU, but then returned the check to plaintiffs. Further, there is no indication that the documentation evidencing the cost of the boat and the deposit was prepared by anyone other than MBC employees. MBC failed to definitively establish that plaintiffs intended to defraud MBC or MFCU, and in any event, the issue of intent presented a question for the jury. The reasons the trial court gave for precluding plaintiffs from collecting any judgment because of their unclean hands may similarly be applied to MBC. Plaintiffs wrote the $10,570 check, but MBC's employee sent the check to MFCU and returned it uncashed to plaintiffs; plaintiffs signed two contracts that misrepresented the down payment, but MBC executed the same documents; plaintiffs benefited from lower monthly payments, but MBC wrote up the financing contract as if plaintiffs paid the $10,570 down payment. Because of MBC's actions and the testimony regarding MBC's directives, plaintiffs sufficiently presented documentary evidence to create a factual issue regarding whether any signed contract was induced by fraud, and the trial court erred in applying the doctrine of unclean hands solely to plaintiffs. Further, the trial court improperly assessed the credibility of plaintiffs, contrary to the rules governing summary disposition decisions.[8]

---

[7] MBC alleged that the trial court assessed competing facts in evidence to determine whether plaintiffs were barred from recovery and no genuine issue of material fact existed because plaintiffs failed to dispute their participation in the $10,570 false deposit. However, plaintiffs *do* dispute they knowingly participated in any fraudulent activity, and presented their deposition testimony to support this assertion. In that testimony, plaintiffs stated they were unaware of any knowing misrepresentation involving the down payment, and were taken advantage of by the more experienced and knowledgeable boat broker, MBC. Giving the benefit of the doubt to plaintiffs, reasonable minds may differ on whether plaintiffs were complicit in the misrepresentation. Even if it is unlikely plaintiffs did not understand the ramifications of writing the check in question, it was not a determination for the trial court to render. Further, MBC did not present documentary evidence opposing plaintiffs' position they were unaware. In MBC's motion for summary disposition, it relied only on the purchase agreement, the financing contract, and MFCU's assignment of the loan back to MBC.

[8] We question other rulings rendered by the trial court. It does not appear that MBC employees "T.J." and "Joann" were deposed. Nonetheless, plaintiffs opposed summary disposition by presenting answers to interrogatories from the prior boat owners, the Merrellis, regarding the work

-6-

Accordingly, the trial court erred because its decision to grant summary disposition was essentially premised on a finding that plaintiffs lacked credibility. The trial court erroneously accepted MBC's version of events, finding plaintiffs' explanation "preposterous." The case should not have been disposed of in a motion for summary disposition when it essentially reached the issue of the credibility of plaintiffs' assertions. Thus, a question of fact remained whether plaintiffs knowingly participated in the down payment misrepresentation and whether they reasonably relied on fraudulent statements or omissions made by MBC to enter into the purchase agreement. The trial court erred in granting summary disposition in favor of MBC under the circumstances.

## IV. JUDICIAL NOTICE

Plaintiffs contend the trial court erred when it refused to take judicial notice of RISA. We conclude that this issue is moot.

"Judicial notice is discretionary, MRE 201(c), and we review for an abuse of that discretion a trial court's decision whether to take judicial notice." *Lenawee Co v Wagley*, 301 Mich App 134, 149; 836 NW2d 193 (2013). "An abuse of discretion occurs when a court selects an outcome that is not within the range of reasonable and principled outcomes." *Id.* (quotation marks and citation omitted). This Court reviews the interpretation of statutes de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

Plaintiffs submit the trial court was required to take judicial notice of the RISA in light of MRE 202(b). That rule of evidence states: "A court shall take judicial notice of [statutes] if a party requests it and (1) furnishes the court sufficient information to enable it properly to comply with the request and (2) has given each adverse party such notice as the court may require to enable the adverse party to meet the request." Plaintiffs then assert there is no question that RISA applies to the present case because the financing contract at issue is an installment transaction under RISA.

However, the trial court did consider whether RISA could apply to this transaction, but refused to apply it contending plaintiffs waived the issue by not raising RISA in their first responsive pleading and because plaintiffs' motion to amend the complaint to include the RISA claim was futile. Moreover, it does not appear that a failure to take judicial notice had any effect on the trial court's decision. Specifically, the trial court did not fail to take judicial notice, but merely refused to allow plaintiffs' arguments under RISA.

---

that was performed on the boat, when it occurred, and the information that was conveyed to MBC's employees. The trial court concluded that the information was hearsay without addressing whether it qualified as an exception to the rules or whether it constituted an admission in light of the Merrellis' prior status as parties to the litigation. However, the trial court judge that presided over this litigation has since retired. A circuit court judge is required to follow published decisions of the Court of Appeals and Michigan Supreme Court. *People v Hunt*, 171 Mich App 174, 180; 429 NW2d 824 (1988). There is no requirement that one circuit court judge follow the decision of another. *Id.* Accordingly, the successor trial judge is not bound by the trial court's conclusion in this regard.

In any case, this issue is moot because, as explained below, the trial court should have allowed plaintiffs to amend their complaint to include the claims under RISA. This Court does not consider moot issues, which "present[] nothing but abstract questions of law which do not rest upon existing facts or rights." *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (quotation marks and citation omitted); see also *Gleason v Kincaid*, 323 Mich App 308, 314-315; 917 NW2d 685 (2018).

## V. AMENDING COMPLAINT

Plaintiffs allege that the trial court erred in failing to allow them to amend their complaint. We agree.

A trial court's decision to grant or deny a motion to amend pleadings is reviewed for an abuse of discretion. *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. *In re Kostin Estate*, 278 Mich App 47, 51; 748 NW2d 583 (2008).

MCR 2.118(A)(2) allows a party to amend a pleading "by leave of court or by written consent of the adverse party," and states: "Leave shall be freely given when justice so requires." "An amendment is generally a matter of right rather than of grace." *Kostin*, 278 Mich App at 52. Leave to amend is generally granted liberally, and is only denied for a few specific reasons. "Leave to amend should ordinarily be denied only for particularized reasons such as undue delay, bad faith or dilatory motive, repeated failures to cure by amendments previously allowed, or futility." *Id.*; see also *Lane v KinderCare Learning Ctrs, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998).

After MBC moved for summary disposition under MCR 2.116(C)(10), plaintiffs attempted to add three new claims in their motion to amend the complaint: (1) an additional claim for violation of RISA; (2) a claim under the Michigan collection practices act, MCL 445.251 *et seq.*, and (3) a claim under the occupational code, MCL 339.901 *et seq*. On appeal, plaintiff only challenges the trial court's denial of the claim related to RISA. The trial court found the claim under RISA would be "redundant and futile" because the "allegations in support of their proposed RISA claim are identical to those they alleged in response to [MBC]'s motion for summary disposition." The trial court is required to give parties an opportunity to amend their pleadings, under MCR 2.118, in response to a motion for summary disposition under MCR 2.116(C)(10), unless the amendment would be futile. *Weymers*, 454 Mich at 658. "An amendment is futile if it is legally insufficient on its face" and merely restates the allegations already made. *Wormsbacher v Phillip R Seaver Title Co*, 284 Mich App 1, 8-9; 772 NW2d 827 (2009).

In the present case, plaintiffs' proposed amendment under RISA did not "simply restate" allegations already pleaded. *Wormsbacher*, 284 Mich App at 9. Plaintiffs proposed amendment added allegations and defenses under RISA not included in previous complaints. For example, while plaintiffs' earlier allegations depend on MBC's alleged fraudulent activity, the RISA allegation includes a statutory violation for improperly identifying the retail price in the installment contract.

The trial court also determined plaintiffs' allegations under RISA were not allowed because, as affirmative defenses, plaintiffs' failure to raise RISA in their first responsive pleading

-8-

effectively waived any defense under RISA. Plaintiffs submit the trial court erred when it characterized the statute as an affirmative defense that must be raised in plaintiffs' first response to MBC's counterclaim because application of RISA denies MBC the existence of their prima facie claim and is not an affirmative defense. Further, plaintiffs allege the trial court erred in holding plaintiffs' proposed amendment to the pleading would be futile because, even if plaintiffs acquiesced to MBC's misconduct, RISA specifies a buyer cannot waive any remedies under RISA. MCL 445.866 states:

> No act or agreement of the retail buyer before or at the time of the making of a retail installment contract, retail charge agreement or purchase thereunder shall constitute a valid waiver of any of the provisions of this act or of any remedies granted to the buyer by law.

The plain language of MCL 445.866 states, when RISA applies, a buyer cannot waive any part of, or remedy under, the statute. "When the language is clear and unambiguous, we will apply the statute as written and judicial construction is not permitted." *Driver v Naini*, 490 Mich 239, 247; 802 NW2d 311 (2011). In light of the statutory language, the trial court erred when it found plaintiffs waived their defense by not including the RISA claims in their first responsive pleading, and it should have allowed plaintiffs to amend the complaint to add claims under RISA.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Anica Letica