*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CURTIS NOEL COTNER,

UNPUBLISHED
June 22, 2023

Plaintiff-Appellant,

v

No. 361433
Muskegon Circuit Court
LC No. 2020-001142-DM

BETH JANENE COTNER,

Defendant-Appellee.

Before: CAMERON, P.J., and MURRAY and GADOLA, JJ.

PER CURIAM.

Plaintiff, Curtis Noel Cotner, appeals as of right the order of divorce and property-division award. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Plaintiff and defendant, Beth Janene Cotner, were married in 1995 and had four children. Defendant was employed as a public-school teacher throughout the entirety of the marriage. Through her work as a teacher, defendant contributed to a 403(b) tax-sheltered annuity plan (the "403(b)") and she also earned credits through a defined-benefit plan (the "pension"). In the early years of the marriage, plaintiff was employed as a medical-device salesman, for which he earned a significant salary and contributed to a workplace retirement plan. In 2007 or 2008, plaintiff quit his job in medical-device sales to open a coffee shop business. To fund this venture, plaintiff took out a loan secured by a lien on the marital home. He also cashed in his retirement to purchase an interest in the brick-and-mortar building which housed the coffee shop.

The coffee shop business failed in 2013. In the ensuing years, plaintiff spent a significant amount of his time training for Ironman triathlons. He worked at various jobs for short periods of time. Plaintiff accrued retirement funds at his new employment, but these funds were later cashed in to pay off debts. The parties also refinanced the marital home to pay off debts, which included the coffee shop loan. Although the parties maintained a joint checking account, plaintiff directed a portion of his paychecks to a personal checking account which was inaccessible to defendant. Defendant also discovered that plaintiff was carrying on a multi-year extramarital affair with his Ironman training partner. Against defendant's wishes, plaintiff leased new vehicles for the parties'

children and himself. In 2019, the parties submitted their income taxes as "married, filing separately." Defendant received a tax refund, while plaintiff incurred a tax liability.

Plaintiff filed for divorce in March of 2020. The case proceeded to trial after informal measures at resolution were unsuccessful. At trial, the trial court heard evidence valuing the marital home. The court later entered an order granting the divorce and issuing a property division order. This order valued the marital home at $290,000. The court awarded defendant her entire pension, and to plaintiff a large portion of defendant's 403(b). Plaintiff was awarded the entirety of the 2019 tax liability. This appeal followed.

## II. PROPERTY DIVISION

Plaintiff argues that the trial court entered an unfair and inequitable property division award. We disagree.

## A. STANDARD OF REVIEW

"This Court reviews a property distribution in a divorce case by first reviewing the trial court's factual findings for clear error, and then determining whether the dispositional ruling was fair and equitable in light of the facts." *Olson v Olson*, 256 Mich App 619, 622; 671 NW2d 64 (2003). "A finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made." *Loutts v Loutts*, 298 Mich App 21, 26; 826 NW2d 152 (2012). "We must affirm the trial court's dispositional ruling unless we are convinced that it was inequitable." *Id*.

## B. LAW AND ANALYSIS

A court's ruling following a divorce trial must "include a determination of the property rights of the parties in the judgment of divorce." *Olson*, 256 Mich App at 627. A marital estate need not be divided into "mathematically equal portions, but any significant departure from congruence must be clearly explained." *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008). In considering the division of a marital estate, a trial court may consider several factors, which include:

> (1) the duration of the marriage, (2) the contributions of the parties to the marital estate, (3) the age of the parties, (4) the health of the parties, (5) the life situation of the parties, (6) the necessities and circumstances of the parties, (7) the parties' earning abilities, (8) the parties' past relations and conduct, and (9) general principles of equity. [*Id*.]

While a trial court may consider other relevant factors, it may "not assign disproportionate weight to any one circumstance." *Sparks v Sparks*, 440 Mich 141, 158; 485 NW2d 893 (1992). After having considered these factors, the marital property is then apportioned "in a manner that is equitable in light of all the circumstances." *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010). "[W]here a trial court's valuation of a marital asset is within the range established by the proofs, no clear error is present." *Jansen v Jansen*, 205 Mich App 169, 171; 517 NW2d 275 (1994).

## 1. AGENCY

Plaintiff contends that the trial court "refused to consider the parties' actions as a marital partnership," instead, viewing this case through an "agency theory." He states that the business decisions related to the coffee shop were shared decisions, and therefore the trial court should not have allocated to him the fault for any business failures. He apparently believes that, just as divorcing spouses enjoy the bounty of a successful business, divorcing spouses should also suffer the losses associated with an unsuccessful business.

At the outset, plaintiff incorrectly states "[defendant] took over management of the family's home and finances to allow her husband to focus on developing a business." This is not supported by the record. It is undisputed defendant worked as a teacher throughout the entirety of the marriage. To the extent the above statement concerns defendant's management of the family's finances, she stated at trial that she took over the family's finances because plaintiff refused to discuss their finances, not so plaintiff could "focus" on the business.

Moreover, the apportionment of a marital estate is not made in a vacuum and courts may consider several relevant factors. *Berger*, 277 Mich App at 717. With respect to the business decisions in this case, the trial court found:

> Plaintiff left well-paying employment in 2007, cashed out his retirement account and refinanced the marital home to pull out equity so that he could open a coffee shop. This endeavor failed miserably. Not only did the Plaintiff not earn income (for over 7 years) from the coffee shop business, the business also lost all of the marital estate equity.

The record supports the trial court's finding that most of the poor business decisions were attributable to plaintiff. Thus, there is nothing incorrect with the trial court's decision to use plaintiff's business failures as a partial basis for the ultimate award.

## 2. SECRETION OF ASSETS

Plaintiff argues that the trial court erroneously concluded he was hiding assets from defendant. Specifically, the trial court found that: "During the marriage, Plaintiff started a separate bank account to keep secret marital assets . . . . The conduct of Plaintiff include[s] secreting assets from Defendant . . . ." This finding was supported by the record. Defendant testified that plaintiff opened a personal checking account without her knowledge. Plaintiff agreed that he deposited a "percentage" of his paychecks into this account. Indeed, plaintiff admitted at trial that he "cut [defendant] out of decisions . . . [a]ll the time." This evidence sufficiently supports the trial court's finding that plaintiff kept some money secret from defendant and there is no clear error on this basis.

Plaintiff appears to further believe that the trial court used this factual finding to disproportionately distribute the marital estate. But plaintiff framed the issue of secretion of assets as dealing with the trial court's factual findings, not the apportionment of the marital estate. Because plaintiff framed this as a factual issue, and not an apportionment issue, it is not appropriate for this Court to consider the specifics of plaintiff's arguments. See *Seifeddine v Jaber*, 327 Mich

App 514, 521; 934 NW2d 64 (2019) (the husband-plaintiff waived an issue by failing to include it within his questions presented); see also MCR 7.212(C)(5).

### 3. PENSION

Plaintiff next argues that the trial court failed to properly value defendant's pension and that the trial court's apportionment of the marital estate was inequitable because it awarded to defendant the entirety of her pension.

"Each judgment of divorce . . . shall determine all rights . . . of the husband and wife in and to . . . [a]ny vested pension, annuity, or retirement benefits." MCL 552.101(3)(a); see also MCR 3.211(B)(2). "As a prelude to this property division, a trial court must first make specific findings regarding the value of the property being awarded in the judgment." *Olson*, 256 Mich App at 627. "[A] trial court clearly errs when it fails to place a value on a disputed piece of marital property." *Id*. at 627-628.

The trial court's February 22, 2022 order stated: "Defendant has a defined benefit pension which may pay about $3,000 per month when she retires." At trial both plaintiff and defendant testified defendant expected to receive approximately $3,018 per month from the pension upon retirement. There are "numerous ways" a court may value property, "but the most important point is that the trial court is obligated to make such a valuation if the value is in dispute." *Olson*, at 627. The trial court plainly placed a value on defendant's pension and its finding was based on evidence presented in the record.

Plaintiff believes defendant's pension should have been valued at $977,000 and the trial court erred when it found otherwise. This assertion is not supported by the record. At trial, plaintiff's attorney cross-examined defendant about the value of her pension:

> *Q*. You're 51. So hypothetically, if you were to live to say 78 . . . . [Y]ou could expect to receive about $977,000. Do you argue with that hypothetical?
>
> *A*. I trust you.
>
> *Q*. Just math.
>
> *A*. I could do the math if you want me to, but I guess I trust your math.
>
> *Q*. It's close to a million dollars.

On appeal, plaintiff characterizes defendant as "be[ing] entitled to $977,000." However, the above colloquy demonstrates that value was merely a hypothetical, not an "entitlement." The party challenging the factual findings—plaintiff—has the burden of proof to support his assertions. See *Olson*, 256 Mich App at 629. There is no affirmative evidence supporting the valuation of the pension other than the "hypothetical" testimony valuing it at $977,000.

Plaintiff asserts that the trial court incorrectly awarded defendant her entire pension. The trial court found that throughout most of the years they were married, both parties accrued significant amounts of money in retirement accounts through their respective employers.

However, the testimony also supports a finding that plaintiff completely depleted his retirement accounts to fund personal passions such as owning a coffee shop and competing in Ironman triathlons. As a result, during that time defendant stopped contributing to her own 403(b) account because the parties could no longer afford it after plaintiff opened the coffee shop. It was only recently that plaintiff's retirement account started to grow again through his employment at Fresenius Kabi USA.

The trial court obviously considered these factors in declining to award plaintiff any of defendant's pension. The trial court also considered the fact that plaintiff's retirement at Fresenius Kabi USA was growing at a significant rate given his earning potential, while defendant's earning potential was relatively static. And the trial court did not deny plaintiff *all* of defendant's retirement benefits. Plaintiff was awarded $30,000 of defendant's 403(b) account, which represents a majority of its value. With these factors in mind, we are not left with a "definite and firm" conviction the trial court made a disproportionate award when it denied plaintiff any claim to defendant's pension. We therefore affirm the trial court's 100% award of the pension to defendant.

## 4. MARITAL HOME

Plaintiff next challenges the trial court's valuation of the marital home at $290,000. He claims the home should have been valued at $335,000, which represents the increases in the housing market. Again, "where a trial court's valuation of a marital asset is within the range established by the proofs, no clear error is present." *Jansen*, 205 Mich App at 171. There was evidence presented at trial valuing the home at $240,000 around March 2020, when plaintiff moved out of the home. There was other evidence valuing the home at $335,000 in October 2021, while these proceedings were ongoing. The trial court's valuation of the home—$290,000—was within this range. Therefore, there is no clear error in the trial court's valuation of the home.

## 5. 2019 TAX LIABILITY

Finally, plaintiff argues the trial court entered an inequitable award when it decided plaintiff was solely responsible for his 2019 tax liability. The parties testified at trial about the circumstances leading to their 2019 tax filing. They generally agreed that they decided to file "married, filing separately" on the advice of their tax preparer. Plaintiff testified that by filing separately, "that this would be the least liability. And if we then split the difference, it would be best on both of our behaves [sic]." This was the only evidence that the parties agreed to "split the difference" on the 2019 tax liability. Plaintiff asserts that because there was no other evidence on this issue, the trial court erred when it saddled him with the full tax liability. But plaintiff fails to recognize that the trial court was free to decide whether plaintiff was telling the truth. *Foreman v Foreman*, 266 Mich App 132, 136; 701 NW2d 167 (2005) (quotation marks and citation omitted) ("[T]his Court recognizes . . . the fact-finder's responsibility to determine the credibility and weight of the testimony.") By awarding the entire 2019 tax liability to plaintiff, the trial court apparently did not believe plaintiff's assertion that they agreed to split this liability, and plaintiff does not present any evidence demonstrating that the trial court's apparent finding was incorrect.

There is also no clear evidence showing the award of the 2019 tax liability was inequitable. Both parties agreed at trial that they visited a financial advisor regarding plaintiff's desire to

purchase a Mazda vehicle.  The advisor explained that they could afford the Mazda if plaintiff reduced his tax withholdings at work.  Even so, defendant remained vehemently against the purchase.  Plaintiff reduced his withholdings and purchased the Mazda anyway.  By reducing his withholdings, plaintiff apparently increased his end-of-the year tax liability.  Again, "equity" in the context of marital property division does not require the division to be mathematically equal, and courts may consider a number of other relevant factors.  See *Berger*, 277 Mich App at 717. Here, the trial court obviously considered plaintiff's conduct with respect to his tax withholdings when awarding him the 2019 tax liability.  We conclude there is no clear error on this basis.

Affirmed.

/s/ Thomas C. Cameron
/s/ Christopher M. Murray
/s/ Michael F. Gadola